THE STATE, ANDREW J. SLINGERLAND, PROSECUTOR, v.
    THE MAYOR AND COMMON COUNCIL OF THE CITY OF
    NEWARK ET AL.

1. The act entitled "An act to empower cities to acquire land for public
   use by condemnation" (*Pamph. L.* 1891, *p.* 172), is not a mere regu-
   lation of procedure, but is a grant of power as well.
2. The terms of said act which authorize the condemnation of land "for
   any *lawful* public use or purpose," apply only to such public uses as
   the legislature has expressed or may express its willingness to promote
   by the power of eminent domain.
3. Said act is applicable to the condemnation of land by the city of
   Newark for the purpose of securing a supply of water for municipal
   uses.
4. The power of the city of Newark to condemn land for the purpose of
   supplying the municipality with water is not impaired by the fact
   that the city has contracted with a water company to construct and
   sell to the city completed water works, of which the land sought by
   condemnation forms a necessary part; especially if the city has con-
   tracted to exert its power of eminent domain whenever it may be
   advantageously employed in furtherance of the purposes of the con-
   tract.
5. Such a condemnation is not rendered illegal by the fact that the
   works may not be satisfactorily completed, and therefore may never
   be accepted and used by the city.
6. The option to purchase water works authorized by the proviso of the
   act approved April 2d, 1888 (*Pamph. L.*, *p.* 366), may legally be exer-
   cised by the city before the completion of the water works for which
   that act provides.
7. The said option impliedly legalizes the purchase of municipal water
   works and water supply.
8. The implied right of municipal corporations to give sealed evidences
   of indebtedness, not having the quality of commercial negotiability,
   for debts lawfully incurred, is unquestionable.
9. The fact that, as a natural incident to the securing by a city of a pub-
   lic supply of water, more water is obtained than is needed for present
   public uses, and that the city disposes of the surplus for an outside
   use, does not deprive the condemnation of land for the water supply
   of its public character.

On *certiorari.*

Argued at November Term, 1891, before Justices DIXON,
REED and GARRISON.

For the prosecutor, *Mahlon Pitney.*

For the defendants, *Joseph Coult* and *Thomas N. McCarter.*

The opinion of the court was delivered by

DIXON, J.    This *certiorari* brings, under review proceedings taken by the mayor and common council of the city of Newark, in pursuance of the act of March 17th, 1891 (*Pamph. L., p.* 172), to condemn lands of the prosecutor "for the purpose of laying down and constructing and maintaining a pipe line or lines" to be used in supplying said city with water for public use.

The first objection which the prosecutor urges against these proceedings is, that the act does not purport to confer any power of condemnation, but merely prescribes how existing powers shall be exercised.

This is not the fair meaning of the law.    Its title is "An act to *empower* cities to acquire land for public use by condemnation," and its chief enactment is " the said city is *hereby empowered* to enter upon and take possession of the said land ; and all title thereto for the purpose for which the same is taken shall    *    *    *    pass from the said owners and parties interested to the said city."    These terms import a grant of power ; very different language would have been employed to denote a mere regulation of existing authority.

It is next objected that the attempt to grant is inefficacious, because the uses for which land may be condemned are not specified.

The words of the act authorize the condemnation of land " for any lawful public use or purpose."

It is not necessary to consider the abstract question, whether the legislature may delegate the power of eminent domain for purposes as undefined as those for which the legislature itself may exercise it, viz., for any public use.    The tenor of the present statute is not so broad ; it only warrants the exertion of the power " for any *lawful* public use or purpose."    This qualifying word, lawful, limits the uses intended, I think, to

such as are sanctioned by the legislature as worthy of this prerogative power, so that a city proceeding under this act must show that it is seeking to acquire land for a purpose which the legislature, either in general laws or in special laws applicable to that city, has expressed its willingness to promote by the power of eminent domain. Thus interpreted, the statute comes within the principle for which the prosecutor contends, that the legislature can delegate the power for such public uses only as the legislature specifically designates for its exercise.

The next question raised is, whether the power is now invoked for such a lawful public use.

The pertinent facts are that, in pursuance of a statute entitled "An act to authorize any of the municipal corporations of this state to contract for a supply, or a further or other supply, of water therefor," approved April 2d, 1888 (*Pamph. L., p.* 366), the East Jersey Water Company and the Mayor and Common Council of the City of Newark made a contract, dated September 24th, 1889, by which the company bound itself to construct works capable of supplying the municipality with water to the amount of fifty million gallons per day, and to furnish therefrom to the city such water as might be necessary for the use of the city and its inhabitants at a stated price per million gallons for a period of twenty-five years, and the city agreed to take the water and pay the price. The contract also contained a provision giving to the municipality an option, to be exercised at any time prior to the expiration of one year after the completion of the works, of purchasing the works, with the water rights and water supplying the same, for the sum of $6,000,000, of which $4,000,000 were to be paid in cash or bonds on the acceptance of the works by the city, and $2,000,000, without interest, were to be paid in cash or bonds at the expiration of eleven years from the date of the contract. It was further stipulated, that if the municipality should exercise this option, then, until the end of said eleven years, the city should not use from said works more than twenty-seven million five hun-

dred thousand gallons per day, and the company should have the right to divert from the works whatever the city and its inhabitants did not use up to the amount of twenty-seven million five hundred thousand gallons per day, and should keep all the works in good order and repair. The parties also agreed that, in case it should be found that any powers or rights held or possessed, or which might thereafter be acquired by the municipality for the condemnation of lands, water or water rights, might be advantageously used or exercised for the purposes of the contract, the municipality should put such power or rights in force, and the company should defray the cost and expense of so doing.

On October 11th, 1889, the city exercised the option secured to it by the contract.

For the construction of the works contemplated by this agreement the land which the city now seeks to take is necessary as a part of the pipe line, and accordingly these proceedings were instituted in June, 1891.

On these facts we are to decide whether the city is endeavoring to employ the power of eminent domain for a lawful public use.

It is plain that the legislature has pointed out the supplying of water to municipalities, and especially to the city of Newark, as one of those public uses for which the right of eminent domain may be put in force. This appears on examination of the general law entitled "An act to enable cities to supply the inhabitants thereof with pure and wholesome water," approved April 21st, 1876 (*Rev., p.* 720), and the special laws relating to the city of Newark, to be found in *Pamph. L.* 1800, *p.* 10; *Pamph. L.* 1857, *p.* 19, and *Pamph. L.* 1860, *p.* 442. Consequently the act of March 17th, 1891, above cited, is applicable to the condemnation of land for supplying water to that city.

But the prosecutor insists that, as by force of the contract the water company is bound to furnish to the city the works complete, the present proceedings are only an effort to aid that company to perform its covenant, which is but a private pur-

pose, or at least one outside of those for which the city may condemn land.

This, I think, is not the full nor the substantial truth. The object of the condemnation is, and its effect will be, to vest the land in the city to be used for its water supply. For this purpose, and for this only, does the statute transfer the title to the city and authorize it to enter upon and take possession of the land. That the same purpose of obtaining a water supply is in part to be accomplished by another municipal power, that of contracting with the water company, does not seem to be a good reason for denying the right to exercise this power. Both powers are granted for the same end; both are convenient for attaining that end. It is reasonable that they should be exerted therefor conjointly, as well as separately, if the conditions require it. And indeed it cannot be said that the company has bound itself to furnish this portion of the pipe line, without the exercise of the municipal power of eminent domain. Concede that the city might have condemned if it had not made this contract, and that the power of condemnation may be advantageously employed to secure the land in controversy, then, by the very terms of the bargain, the obligation of the company is not absolutely to furnish this land, but only to defray the cost and expense of the city's condemnation thereof. Nor is it as though the company were seeking to exercise the power by delegation from the city and so to acquire the land for itself. Then would be pertinent that line of decisions which deny the right of the legislative grantee to delegate its authority to another. But under present circumstances the doctrine of *Ten Broeck* v. *Sherrill*, 71 *N. Y.* 276, is more apt, that the power to condemn is not impaired by the fact that the public has contracted with a stranger for the thing which it is trying to appropriate, the stranger being unable otherwise to fulfill his contract.

The prosecutor further urges that, as in certain contingencies the city may refuse to accept the works, in which event they will remain the property of the water company, it is

therefore uncertain whether his land will be devoted to public use, and for this reason condemnation is illegal.

But the same uncertainty attends almost every condemnation; after the taking something may occur to prevent the actual user. The common effect of such an occurrence is that the land reverts to the prior owner. Such would be the consequence here. The water company acquires no title whatever, and the city acquires title for the specified use only, on failure of which the rights of the former owner would come into play. It can afford the prosecutor no ground of complaint that his rights may so soon revive.

It is further objected by the prosecutor that the contract of September 24th, 1889, has ceased to be valid, and hence the city cannot proceed in aid of the scheme which it was designed to effectuate. The grounds for this contention are that, in the exercise of the option to purchase, the city expressly terminated the agreement for a temporary supply of water, and that the exercise of the option was itself futile—*first*, because according to the act of April 2d, 1888, by authority of which the contract was made, the option could not be exercised until, under the bargain for a temporary supply, the works had been tested and proved satisfactory; and, *secondly*, because the power to purchase is dependent upon a statute approved May 14th, 1889 (*Pamph. L., p.* 457), which is unconstitutional.

The act of April 2d, 1888, provides that the appropriate board, body or department of any municipality may contract with any water company, or other company or contractor, for the obtaining of a supply, or a further or other supply, of water for one year, or for a term of years not exceeding twenty-five years in one term, and then is added this proviso, "that such contract may contain an option for the acquiring by such municipal corporation of the land, water and water rights for such supply, on terms to be fixed in said contract."

On its face this proviso certainly seems to leave to the contracting parties the settlement of all matters relating to the option of which it speaks, and there appears no sufficient reason for holding that the time of exercising the option is not

included.   Doubtless there are many questions of expediency
to be considered in such a transaction, but the legislature has
committed the decision of these questions in behalf of the
public to the municipal authorities, and there exists in the
present case no ground for judicial interference.

The attack upon the constitutionality of the act of May
14th, 1889, need not, I think, be noticed.   The only rele-
vancy of the act to the acquisition of water works is, that it
purports to sanction the issue of bonds in order to pay the
price of purchasing them.   But suppose this statute fails,
there remains the act of April 2d, 1888, which expressly
authorizes the contract for the option, and that impliedly war-
rants the exercise of the option and so validates the purchase.
By the terms of the contract the price is to be paid in cash or
in the bonds of the city, payable in not less than twenty years
nor more than thirty years, with interest semi-annually at the
rate of four per cent. per annum.   If the city has not the
means of raising the necessary cash, it may certainly issue to
the company instruments under seal, showing that it owes to
the company the stipulated price, both principal and interest,
and when the price is to be paid.   Such instruments would
be the bonds called for by the contract, for the agreement does
not say that the bonds must be negotiable or have the quality
of commercial securities, and in the absence of power by the
city to issue bonds of this character, such bonds could not be
demanded.   The implied right of municipal corporations to
give sealed evidences of indebtedness for debts legally incurred
is unquestionable.   It is only when these evidences of debt
are to be rendered commercially negotiable, that express
authority to that end must be granted.   1 *Dill. Mun. Corp.*
(3 *ed.*), § 125 ; *The Mayor* v. *Ray,* 19 *Wall.* 468 ; *Hacketts-
town* v. *Swackhamer,* 8 *Vroom* 191 ; *Morgan* v. *Guttenberg,*
11 *Id.* 394.

The next objection presented is that, because the contract
secures to the water company for a term of years some of the
water passing through the pipe line, these proceedings are
instituted in part for private uses, and so are illegal.

It would, of course, be absurd for the city to construct water works adequate only for its present wants, and the prosecutor does not assert that the works now contemplated are unreasonably large in view of the city's prospective growth, or that more land is to be taken than is necessary for their construction and maintenance. Under these circumstances it is. not apparent how the prosecutor can have any legal concern with the quantity of water drawn through the aqueduct, or with the use made of so much of it as the public does not need. But, at any rate, the mere fact that, as a natural incident to the securing of a public water supply, more water is obtained than is now requisite for public purposes, and that the city disposes of the surplus for an outside use, does not deprive the condemnation of its public character. The power to construct and maintain the works still rests on the municipal public use, not on the disposition of the accidental excess. *Spaulding* v. *Lowell,* 23 *Pick.* 71 ; *Attorney General* v. *Eau Claire,* 37 *Wis.* 400 ; *State* v. *Eau Claire,* 40 *Id.* 533.

The last objection is that the city cannot take the fee, but only an easement, and should be required to describe the easement in the proceedings.

It is not incumbent upon the city to give any particular technical name to the right which it asks to condemn, and it has not done so. It has, in its petition, clearly set forth the purpose for which it designs. to take the land of the prosecutor, and the statute declares that for such purpose the title to the land shall pass from the owners and parties interested to the city. By these means the rights condemned are sufficiently ascertained. Any attempt by the city further to define them would be as likely to obscure as to elucidate the matter, and could have no useful end.

The proceedings under review should be affirmed.