## WILLIAM S. APPLETON *vs.* CITY OF NEWTON.

Suffolk. January 18, 21, 1901. — March 2, 1901.

Present: HOLMES, C. J., KNOWLTON, MORTON, & BARKER, JJ.

In a taking of land by a city for the purposes of its water supply under statutory authority, if the statutes giving the authority are correctly referred to in stating the purposes of the taking, a further reference to other statutes not applicable does not invalidate the taking; and, without naming the statutes, a statement that the land is taken "for the purpose of the water supply for said city of Newton and an additional water supply therefor" is a sufficiently definite statement of the purposes of the taking.

A taking of land for a public use is strictly a proceeding *in rem.* In all such cases it is enough if there is such a notice as makes it reasonably certain that all persons interested who easily can be reached will have information of the proceedings, and that there is such a probability as reasonably can be provided for, that those at a distance also will be informed. It is for the Legislature to say, what means of knowledge will be enough to affect the landowner with notice.

St. 1872, c. 344, an act to supply the town of Newton with water, enlarged by St. 1889, c. 302, gave a landowner whose land was taken under the act three years within which to file a petition for the assessment of damages for the taking, and did not require that any formal notice of the taking should be given to him other than constructive notice by filing an instrument of taking in the registry of deeds. The taking of land under the act required concurrent action by the mayor and aldermen and common council of Newton after it became a city. *Held,* that the Legislature might assume that persons whose lands were taken under the act would have such knowledge on the subject of the taking, that the constructive notice by filing an instrument of taking in the registry of deeds would be all that was required to enable them to protect their rights within the three years allowed them for that purpose, and that the act is constitutional.

BILL IN EQUITY seeking to remove a cloud from the title to the plaintiff's land created by an instrument dated February 24, 1890, and recorded February 26, 1890, purporting to be a taking by the defendant of certain land of the plaintiff therein described, for the purposes set forth in St. 1872, c. 344, St. 1876, c. 54, and St. 1889, c. 302, " and all other acts relating to supplying the city and town of Newton with water and for the purposes of the water supply for the said city of Newton and an additional water supply therefor," filed August 3, 1899.

The case was reserved by *Hammond,* J., upon the bill, answer and evidence for the consideration of the full court. The bill among other matters set forth the following:

First. The statement in said paper of taking, Exhibit A, of the purposes for which said strip of land was taken, is not sufficiently definite and explicit to comply with the requirements of St. 1872, c. 344, § 2.

Second. Said paper of taking, Exhibit A, states that the taking of said strip is for the purposes set forth in St. 1876, c. 54, and St. 1889, c. 302, and the plaintiff says that, for the purposes set out in said acts, lands in Newton could not be taken.

Third. The purposes for which said strip of land was in fact taken were not purposes for which the taking of the strip was by law authorized.

Fourth. The provisions of said St. 1872, c. 344, so far as they purport to authorize the taking of said strip, are unconstitutional

and void, since they do not make adequate provision for compensation to the plaintiff for said strip so taken, for the reason that said act does not require any notice to be given to the plaintiff of the taking of his property, and the remedy afforded to the plaintiff for securing compensation is at the peril of his finding out within three years that a paper of taking has been filed in the registry of deeds. Wherefore the plaintiff says that said provisions of St. 1872, c. 344, are in violation of the requirements of the Constitution of Massachusetts, Declaration of Rights, Article 10, as follows: " Whenever the public exigencies require, that the property of any individual should be appropriated to public uses, he shall receive a reasonable compensation therefor;" and are in violation of Article 14 of the Amendments of the Constitution of the United States, as follows: " Nor shall any state deprive any person of life, liberty, or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

That by reason of the matters above alleged, the said alleged taking under said paper, Exhibit A, was null and void, and said paper recorded in the registry of deeds is a cloud upon the plaintiff's title to the strip of land alleged to have been taken, which cloud ought in equity and good conscience to be removed.

The bill prayed that the alleged taking might be declared null and void, and that the city of Newton, and its agents and officers, be perpetually enjoined from asserting or claiming any title to said strip of land by virtue of the alleged taking, and that said city be directed to execute and deliver, by its mayor, to the plaintiff a deed releasing to the plaintiff in fee the strip of land described in the paper of taking.

The instrument of taking, called above Exhibit A, was as follows :

" Know all men by these presents. That the City of Newton a municipal corporation duly established according to law, situated in the County of Middlesex and Commonwealth of Massachusetts hath taken the parcels of land hereinafter described by virtue and in part execution of and for the purposes set forth in the following acts of the Legislature of said Commonwealth : to wit : Chapter three hundred and forty-four of the acts of the year eighteen hundred and seventy-two, entitled ' An Act to

Supply the Town of Newton with Water' Chapter fifty-four of the Acts of the year eighteen hundred and seventy-six, entitled ' An Act in Addition to an Act to Supply the Town of Newton with Water' Chapter three hundred and two of the Acts of the year eighteen hundred and eighty-nine entitled ' An Act to Provide an Additional Water Supply for the City of Newton' and all other Acts relating to supplying the City and Town of Newton with water: and for the purposes of the water supply for the said City of Newton and an additional water supply therefor. The following is a description of the land so taken as aforesaid : being a certain tract of land situated in the City of Newton in the County of Middlesex and Commonwealth of Massachusetts bounded and described as follows to wit: [Description.] Said parcel of land is shown upon a ' Plan of lands in the City of Newton taken by the City of Newton for an additional water supply,' dated December thirtieth eighteen hundred and eighty-nine, and to be recorded herewith. Said land so far as is known belongs to William S. Appleton. To have and to hold the said parcel of land to the said City of Newton its successors and assigns, to its and their sole use forever for the purposes of and agreeably to the provisions of said Acts. In witness whereof the said City of Newton and the following officers thereof have caused the corporate seal of said City of Newton to be hereto affixed and these presents to be signed and sealed by Heman M. Burr, the Mayor of said City of Newton, and by a majority of the Board of Aldermen of said City of Newton, and by a majority of the Common Council of said City of Newton, this twenty-fourth day of February A. D. 1890."

This instrument was signed by the mayor and by a majority of the board of aldermen and by a majority of the common council of the city of Newton. It was acknowledged by the mayor, a member of the board of aldermen and a member of the common council, and was certified to have been recorded in the Middlesex South District Deeds on February 26, 1890.

The plaintiff alleged and contended, that he had no notice of the taking until some time after December, 1897, several years after his right to claim damages for the taking had expired. The substance of the evidence upon the question of notice is stated in the opinion of the court.

The plaintiff showed by the assessors' books of the city of Newton and by his tax bills, that the valuation of his land in Newton had remained the same from 1889 to 1894, and from 1894 to 1899 was slightly increased. It was argued for the plaintiff that this gave him the right to assume that no part of his land had been taken.

*R. S. Gorham & Roland Gray*, for the plaintiff.

*W. S. Slocum*, for the defendant.

KNOWLTON, J. The first question raised at the argument was whether the form of the taking of the plaintiff's land was sufficient to answer the requirements of the statute. This question must be answered in the affirmative. The instrument which was duly recorded in the registry of deeds, signed by the mayor and a majority of the board of aldermen and a majority of the common council of Newton, set forth that the city had taken the land, which was described by metes and bounds, and by a reference to a plan, and by giving the name of the owner, and stated that the taking was "in part execution of and for the purposes set forth in the following acts of the Legislature of said Commonwealth : to wit : Chapter three hundred and forty-four of the acts of the year eighteen hundred and seventy-two, entitled ' An Act to Supply the Town of Newton with Water ' Chapter fifty-four of the acts of the year eighteen hundred and seventy-six entitled, ' An Act in Addition to an Act to Supply the Town of Newton with Water ' Chapter three hundred and two of the Acts of the year eighteen hundred and eighty-nine entitled ' An Act to Provide an Additional Water Supply for the City of Newton ' and all other Acts relating to supplying the City and Town of Newton with water: and for the purposes of the water supply for the said City of Newton and an additional water supply therefor."

There is no doubt that the taking was within the authority which the St. 1872, c. 344, as amended by the St. 1889, c. 302, purports to give. These two statutes being referred to as a foundation for the proceedings, the validity of the taking is not affected by the reference to other acts relating to the water supply of Newton which have no direct application to the taking of this land. Apart from the reference to the statutes for a statement of the purposes of the taking, an express statement

in the words, " for the purposes of the water supply for the said City of Newton and an additional water supply therefor," is sufficiently definite. The filing of this paper in the registry of deeds, in pursuance of a former order of taking which was regularly passed by both branches of the city council and approved by the mayor, was a good taking to pass the title under the statutes. St. 1872, c. 344. St. 1889, c. 302. *Ham* v. *Salem*, 100 Mass. 350. *Lexington Print Works* v. *Canton*, 167 Mass. 341, 344 and cases cited. *Burnett* v. *Boston*, 173 Mass. 173. *Rockport* v. *Webster*, 174 Mass. 385.

The most important question in the case is whether the St. 1872, c. 344, is constitutional, inasmuch as it contains no provision for a formal notice of the taking to landholders, either before or after the appropriation of the land. The determination of the question whether there is a necessity for the taking of the property in the exercise of the right of eminent domain lies with the Legislature as the representative of the sovereign power. On this question, the parties to be affected by the taking are not entitled to notice or a hearing. *Holt* v. *City Council of Somerville*, 127 Mass. 408. *Old Colony Railroad, petitioner*, 163 Mass. 356 and cases cited. All that is necessary is an adequate provision for their compensation, and this of course implies an opportunity to be heard on the amount to be paid. Declaration of Rights, Art. 10. U. S. Const. Amendm. Art. 14. *Brickett* v. *Haverhill Aqueduct*, 142 Mass. 394, 396, 397. *Chicago, Burlington & Quincy Railroad* v. *Chicago*, 166 U. S. 226, 241. An opportunity to be heard necessarily involves notice or the means of knowledge of the taking, before the expiration of the time within which they may have a remedy for the deprivation of their property.

It does not follow that personal service of a paper, or formal notice of any kind is necessary. A taking of land for a public use is strictly a proceeding *in rem*, the *res* being within the jurisdiction of the State. In all such cases it is enough if there is such a notice as makes it reasonably certain that all persons interested who easily can be reached will have information of the proceedings, and that there is such a probability as reasonably can be provided for, that those at a distance also will be informed. *Huling* v. *Kaw Valley Railway & Improvement Co.*

130 U. S. 559, 564. *Hagar* v. *Reclamation District No. 108,* 111 U. S. 701, 711. *McMillen* v. *Anderson,* 95 U. S. 37. *Davidson* v. *New Orleans,* 96 U. S. 97. *In re Union Elevated Railroad,* 112 N. Y. 61, 75. *Baltimore Belt Railroad* v. *Baltzell,* 75 Md. 94. *State* v. *Messenger,* 27 Minn. 119. It is for the Legislature, within proper limitations, to say what means of knowledge will be enough to put upon a landowner the duty, within a prescribed time, to take measures to obtain his compensation if he wishes to save his rights. The Legislature in this case has given the petitioner three years after the taking of his land, within which to commence a suit, and has not required that any formal notice of the taking should be given him other than constructive notice by filing a paper in the registry of deeds. The precise question before us is whether it is so plain that the Legislature has failed to make reasonable provisions for giving landowners an opportunity to obtain compensation for land taken, that for this reason we should declare the statute unconstitutional. In fixing a time within which petitions for the assessment of damages may be filed, the Legislature assumed without making a special provision therefor, that landowners would have notice of the taking. There are good grounds for the assumption. In the first place, the statute authorizing the taking is a public law of which every one is presumed to have knowledge. The Legislature has provided for the publication and distribution of printed copies of statutes soon after their enactment. This statute is one, which from its nature, affects people and property only in a very small territory. The subject to which it relates is one of general public interest in the neighborhood affected by it, and it would hardly be possible that such legislation would be proposed and enacted without general knowledge among the people in that neighborhood that such a proposition was being considered. The method of taking the land is also by public proceedings requiring concurrent action of both branches of the city government, whose meetings are ordinarily public, and whose doings are a matter of public record as well as of general comment and discussion. After that, before the taking can become effectual, there must be constructive notice filed in the registry of deeds, where the titles to land may be examined by anybody. Add to this the fact

that the taking would be almost certain to involve a public investigation and inspection of the land itself before the desirability of it would be ascertained, and would usually be followed by physical possession and use, long before the expiration of the three years, and we see that under the provisions of the act in its application to the subject to which it relates, those interested would be almost certain to have knowledge of the proceedings long before the expiration of the three years mentioned in the statute.

In the present case, although the petitioner seems to have misunderstood the situation, it seems that with reasonable diligence he hardly could have failed to know that proceedings had been taken affecting his land, which made it important for him to take action for the preservation of his rights. In the summer and autumn·of 1889 he knew that the city authorities were making investigation on his land, boring holes and sinking iron pipes or driving wells a few hundred feet apart, with a view of finding a water supply to be added to that then in use by the city. On January 1, 1890, he wrote to the city engineer a letter as follows: " Dear Sir: I expected that in compliance with your promise you would let me know what report you made to the City Government of Newton in reference to my river front. I have heard nothing from you, & read that the Government is already considering the matter. I hope you will now kindly inform me just what you have recommended to be done." On January 20, 1890, he received a reply in which the city engineer spoke of his report to the city government as follows: It " had no special reference to action in regard to your land; but referred only to the land in the valley of the river in Newton and Needham. But the City Government decided to take immediate action and under the rights granted them by legislative enactment they have nominally taken a strip of your land fronting on the river. But their action is not of such a nature, that I see any difficulty with dealing with you in the manner which I suggested at our last interview. In fact I had proposed seeing you as soon as I could get my plans and surveys perfected. But the Winter has been so mild the work of surveying the meadows in the valley has been attended with great difficulty on account of the high water flooding the land. I will endeavor to

see you in a few days or weeks at most as soon as the plans can be perfected." The land in the valley of the river included the plaintiff's land. The order taking the property was adopted by the city government and approved by the mayor on December 30, 1889, and the taking was recorded on February 26, 1890. After the receipt of this letter the plaintiff made no inquiries, and neither knew or heard anything more in reference to the city's relation to his land until December, 1897, when he found the taking on file in the registry of deeds. The city has continued its iron pipes in the ground, and intends to connect them with its conduit which extends up the valley of the river on the opposite side, but it has not yet connected them. The plaintiff understood in 1890, or about that time, that the land of one Wiswell, next beyond his, had been bought and paid for by the city.

We are of opinion that the Legislature might assume that persons whose lands are taken would have such knowledge on the subject of the taking that the constructive notice by filing an instrument of taking in the registry of deeds would be all that is required to enable them to protect their rights within the three years allowed them for that purpose. A great many statutes have been passed in this Commonwealth, authorizing the taking of land by the right of eminent domain, with no provision for any other kind of notice than this. The constitutionality of none of them, so far as we know, has been questioned on this ground, and they have always been assumed to be constitutional. *Ham* v. *Salem*, 100 Mass. 350. *Charlestown Branch Railroad* v. *County Commissioners*, 7 Met. 78. *Davidson* v. *Boston & Maine Railroad*, 3 Cush. 91, 106. *Chandler* v. *Jamaica Pond Aqueduct*, 114 Mass. 575. *Woodbury* v. *Marblehead Water Co.* 145 Mass. 509, 511. *Brock* v. *Old Colony Railroad*, 146 Mass. 194.

The case last cited is an authority which very nearly covers the question now before us. So far as appears, the only notice that was given in that case that was not given in this, was a publication under the Rev. Sts. c. 39, §§ 46, 48, of notice of the application to the Legislature for a special charter. That gave the plaintiff no knowledge beyond that possessed by the plaintiff in this case, for we understand that the present plaintiff

knew of the authority to the city to procure an addition to its water supply.  *Chandler* v. *Jamaica Pond Aqueduct*, 114 Mass. 575, was very similar to the present case.  The constitutionality of a statute like that now before us seems to have been involved in the decision, although it was not argued, but was assumed both by counsel and the court.

We are of opinion that the statute is constitutional.

*Bill dismissed.*