N. Ward Company *vs.* Street Commissioners of the City of Boston & another.

Suffolk.   January 28, 29, 1914. — April 1, 1914.

Present: Rugg, C. J., Loring, Sheldon, De Courcy, & Crosby, JJ.

*Municipal Corporations.   Boston. . Eminent Domain.*

St. 1909, c. 486, § 31, enlarges the power of the city of Boston to take land by right of eminent domain so that it may be exercised for any municipal purpose, including the collection and disposal of garbage and refuse; and the power to take for this purpose land on one of the islands of Boston Harbor includes the right to take not only the upland but also adjacent flats lying between high and low water mark.

A taking of land and flats on an island in Boston Harbor under St. 1909, c. 486, § 31, by the board of street commissioners of the city of Boston, at the request of the commissioner of public works and with the approval of the mayor, for the purpose of providing for the disposal of the garbage and refuse of that city, is not rendered invalid by the fact that the taking was made at the request of a contractor who was to make use of the land for some time at least, if it appears that the primary object of the taking was the municipal purpose stated.

St. 1909, c. 486, § 31, which provides that, at the request of any department of the city of Boston and with the approval of the mayor, the board of street commissioners in the name of the city may take in fee for any municipal purpose any land within the limits of the city not already appropriated to public use, prescribes that land taken by right of eminent domain shall be "paid for in the manner provided for the taking of and the payment of damages for land for highways in said city," thus incorporating, so far as applicable to each taking, the provisions of St. 1906, c. 393, § 2, that the board of street commissioners of the city of Boston before taking land for a highway shall appoint a time for a public hearing and shall publish notice thereof in the manner there provided; and therefore a vote of the street commissioners, passed at the request of the commissioner of public works, purporting to take land and flats on an island in Boston Harbor for the purpose of providing for the disposal of the garbage and refuse of the city, is invalid if no time for a public hearing was appointed, no notice of such a hearing was published and no such hearing was had.

Petition, filed on May 23, 1912, for a writ of certiorari to quash the proceedings of the commissioner of public works and the board of street commissioners of the city of Boston relating to the taking of certain parcels of land and flats at Spectacle Island in Boston Harbor belonging to the petitioner for the pur-

pose of providing. for the disposal of the garbage and refuse of the city.

The case came on to be heard upon the petition, the answers and certain agreed facts by *Morton,* J., on December 15, 1913, and, before he resigned on that day, was reserved by him for determination by the full court.

*G. L. Mayberry,* (*L. A. Mayberry* with him,) for the petitioner.

*J. J. Corbett,* (*R. M. Walsh* with him,) for the respondents.

SHELDON, J.    It is practically agreed by both parties that the city of Boston had no right to make this taking of upland and flats, unless that right had been given to it by legislation. This is undoubtedly correct. No such authority has been given in express terms. But it was provided by St. 1909, c. 486, § 31, that "At the request of any department, and with the approval of the mayor the board of street commissioners, in the name of the city, may take in fee for any municipal purpose any land within the limits of the city, not already appropriated to public use. Whenever the price proposed to be paid for a lot of land for any municipal purpose is more than twenty-five per cent higher than its average assessed valuation during the previous three years, said land shall not be taken by purchase but shall be taken by right of eminent domain and paid for in the manner provided for the taking of and the payment of damages for land for highways in said city. No land shall be taken until an appropriation by loan or otherwise for the general purpose for which land is needed shall have been made by the mayor and city council by a two thirds vote of all its members; or in case of land for school purposes by the school committee and school house department in accordance with law; nor shall a price be paid in excess of the appropriation, unless a larger sum is awarded by a court of competent jurisdiction. All proceedings in the taking of land shall be under the advice of the law department, and a record thereof shall be kept by said department." The first question in this case is, therefore, whether under the statute the city has authority to take land for the erection thereon of a plant for the disposal of city refuse or garbage.

It is to be observed that by this enactment the Legislature has forbidden the purchase by the city of land for any purpose for a price greater than that limited by the act. Rightly or wrongly,

the Legislature apparently considered that the officers of the city should not be entrusted with an unrestricted power of spending the public money in this way. But it was manifest that there might be cases where the result of this prohibition would be to prevent the city from purchasing at all particular parcels of land that might be indispensably necessary for municipal purposes. To meet such exigencies, it was provided that when land was needed for municipal purposes, if the price proposed to be paid therefor exceeded the statutory limit, the land should not be taken by purchase, but only by eminent domain, — in which case a fair price, to be fixed, if necessary, by proceedings in court, would be paid therefor. In our opinion, the intention of the statute was to give to the city the same right to take land by eminent domain that it already had to acquire land by purchase, — that is, in the language of the act, "for any municipal purpose." It was intended, according to the natural meaning of the words used, to enlarge the power of taking by eminent domain so as to make it include every municipal purpose; and this construction is required also by the plain object of the statute.

It is true that statutes granting the power to exercise the sovereign right of eminent domain are to be construed with some strictness, and are not to be extended to include matters not expressly or by necessary implication brought within their language. But it also is true that such an operation must be given to this act as will carry into effect its manifest purpose and intention. Nothing is to be added to what the Legislature has said; and on the other hand effect is to be given to all that it has said. This is the result of the decisions. *Commissioners on Inland Fisheries* v. *Holyoke Water Power Co.* 104 Mass. 446, 449. *Housatonic Railroad* v. *Lee & Hudson Railroad,* 118 Mass. 391. *Boston & Maine Railroad* v. *Lowell & Lawrence Railroad,* 124 Mass. 368. *Slingerland* v. *Newark,* 25 Vroom, 62. *Matter of Thomson,* 86 Hun, 405. And see the cases collected in Lewis, Em. Dom. (3d ed.) § 388.

We do not regard it as material that by legislation enacted since 1909 power has been given to the city to take land by eminent domain for various particular purposes, many of which probably were already covered by the act referred to. Sts. 1911, cc. 169, 435, 453, 591; 1912, cc. 338, 558, 661; 1913, cc. 337, 363, 412, 536,

695. Some of these statutes were amendatory of earlier acts; some provided specially for the procedure to be followed under them; some, though strictly unnecessary, may have been passed out of abundant caution, to put the power of the city beyond any possible question. We find nothing in these or any other enactments that amounts to a legislative construction of the statute first cited, or that requires us to say that the statute is to have less than the full effect which the Legislature intended to give to it.

Nor have we any doubt that the collection and disposal of garbage and refuse constitute a legitimate municipal purpose. That doctrine has been recognized by this court. *Vandine, petitioner,* 6 Pick. 187. *Haley* v. *Boston,* 191 Mass. 291. It is provided by R. L. c. 25, § 14, among other things, that a town may make contracts "for the disposal of its garbage, refuse and offal." This was treated as one of the proper functions of the city of Boston by Sts. 1903, c. 411, and 1909, c. 486, § 6. It has been so regarded in other courts. *State* v. *Orr,* 68 Conn. 101. *State* v. *Robb,* 100 Maine, 180. *Atlantic City* v. *Abbott,* 44 Vroom, 281. *Grand Rapids* v. *De Vries,* 123 Mich. 570. *Walker* v. *Jameson,* 140 Ind. 591. *Kilvington* v. *Superior,* 83 Wis. 222. *California Reduction Co.* v. *Sanitary Reduction Works,* 199 U. S. 306. *Gardner* v. *Michigan,* 199 U. S. 325.

This taking included not only upland, but also adjacent flats, lying between high and low water mark. The petitioner contends that these could not be taken without distinct legislative authority. It is settled that without such authority a city or town cannot lay out a way over navigable waters or over flats covered with water at high tide. *Commonwealth* v. *Coombs,* 2 Mass. 489. *Commonwealth* v. *Charlestown,* 1 Pick. 180. *Kean* v. *Stetson,* 5 Pick. 492. *Charlestown* v. *County Commissioners,* 3 Met. 202. *Marblehead* v. *County Commissioners,* 5 Gray, 451. *Commonwealth* v. *Roxbury,* 9 Gray, 451, 494. But these and other similar decisions go upon the ground that the flats which, when covered by water, are of public right, are within the control of the Legislature, and that this control is not taken to be abandoned by the use of mere general words, to which full effect can otherwise be given. *Boston Water Power Co.* v. *Boston & Worcester Railroad,* 23 Pick. 360. *Attorney General* v. *Woods,* 108 Mass. 436, 440. On the other hand there is no question that the Legislature may authorize

the taking of flats as well as of upland, and will be taken to have done so when that intention clearly appears. The power to take flats by eminent domain, though that power did not appear to have been given by express words, was assumed by this court to exist in *Breed* v. *Lynn,* 126 Mass. 367, 371, although the court doubted its authority to compel the city to exercise that power. In *Wyman* v. *County Commissioners,* 157 Mass. 55, the court upheld an adjudication of county commissioners that it was necessary to take for the enlargement of a burial ground not only certain upland, but also the adjacent flats lying between high and low water mark, which belonged as private property to the owner of the upland. The court referred to the fact that the flats could not be filled or any structure put upon them without a license from public authority (Pub. Sts. c. 19, § 9, now R. L. c. 96, § 17), and the court said further (Field, C. J., page 57): "The interests of the public in land covered by the tides are not affected by the change of ownership, nor does that change in and of itself work any obstruction to navigation, and private property in such land is not exempted from being taken for public use if it is necessary."

In our opinion, that decision settles the question now being considered. It is a fact within common knowledge, referred to in our statutes and in many of our reported cases, that the city of Boston has a large water front, and includes many islands, some but not all of which are in its private ownership. There must be in it many municipal purposes which best can be served by the use of flats as well as of upland. Public landing places, for example, probably would require the use of flats. In the case at bar, the flats taken may have been indispensable to the carrying out of the use intended. At any rate that was a matter to be determined by the body to which the Legislature chose to entrust the decision. *Talbot* v. *Hudson,* 16 Gray, 417, 424. *Dingley* v. *Boston,* 100 Mass. 544, 550. *Moore* v. *Sanford,* 151 Mass. 285, 288. *Lynch* v. *Forbes,* 161 Mass. 302. *Burnett* v. *Boston,* 173 Mass. 173. *Boston* v. *Talbot,* 206 Mass. 82. And here, as in *Wyman* v. *County Commissioners, ubi supra,* the flats cannot be filled or built upon without a license from the board charged with the duty of protecting the interests of the public. These flats were not "already appropriated to public use" within the meaning of the statute, sim-

ply because, lying between high and low water mark, they were subject to certain rights of the public.

Nor can it be said that this taking was invalid because made at the request of a contractor and because the land taken was intended to be used, for some time at least, by that contractor. If, as appears here, the primary object of the taking was for a municipal purpose, the particular manner in which the object aimed at was to be accomplished is immaterial. This principle was applied to the Boston subway in *Prince* v. *Crocker,* 166 Mass. 347. See also *Ten Broeck* v. *Sherrill,* 71 N. Y. 276; *Slingerland* v. *Newark,* 25 Vroom, 62; and *Summerfield* v. *Chicago,* 197 Ill. 270.

Accordingly we are of opinion that the city of Boston had authority to make this taking.

But the statute which we first quoted provides that the land taken under it shall be taken and paid for "in the manner provided for the taking of and the payment of damages for land for highways in said city." We cannot adopt the contention of the respondents that this merely regulates the mode of payment for the land taken. The provision is not that it shall be paid for in the manner stated. The reference is to the manner provided for taking as well as to that provided for the payment of damages. If this construction were otherwise doubtful, it would be made certain by the fact that no machinery except by this reference was provided for the exercise of the additional power given to the street commissioners. We cannot doubt that the preliminary actions and modes of procedure required for the taking of lands for highways in Boston were so far as applicable incorporated into the statute now before us. Those actions and modes of procedure are set forth in St. 1906, c. 393, § 2, for the amendment made by St. 1913, c. 536, § 2, is not now material. Doubtless all those provisions were not to be followed in this case with absolute exactness, for some of them could not be applied to a taking for the purposes that here were involved. But the provisions that are applicable and that are essential to the validity of a taking for highways must be observed. *Lockwood* v. *Charlestown,* 114 Mass. 416. *Phillips* v. *County Commissioners,* 122 Mass. 258, 260. *Northampton* v. *Abell,* 127 Mass. 507. *Boston Elevated Railway* v. *Presho,* 174 Mass. 99. *Danforth* v. *Groton Water Co.* 176 Mass. 118.

One preliminary requirement of St. 1906, c. 393, § 2, is that if the street commissioners, with whom the power of taking is lodged, shall be of the opinion that the public improvement should be made, they shall appoint a time for a public hearing, and give stated notice thereof by advertisement in two newspapers, or in the City Record. St. 1909, c. 486, § 29. It is only after such notice has been given and such hearing had that they may pass an order for the making of any improvement that in their opinion is required by the public convenience. Nothing of this kind was done by the street commissioners; no such notice was given; no such hearing was had. Upon the bare request of the commissioner of public works, the street commissioners, by vote, made the taking.

Without going further into the matter, we are clearly of opinion that this was not a valid taking. While a landowner cannot require a preliminary notice that a taking of his land is contemplated under a statute which makes no provision for such a notice (*Appleton* v. *Newton*, 178 Mass. 276), it universally has been held, so far as we are aware, that a notice of some kind, constructive or otherwise, that a taking has been made, must be given, and given in such a way as reasonably to affect him with notice, at any rate unless there has been by some open and notorious act an actual physical taking made. This is the doctrine of *Appleton* v. *Newton, ubi supra.* But we need not discuss that question. Here the statute expressly requires a preliminary notice to be given by publication and a public hearing to be had thereon. That is a condition precedent to any further action; it is the beginning of the procedure by which alone private property lawfully can be taken from its owner. As a matter of principle this could not be dispensed with. And so far as we have been able to discover, we always have held that where, as here, some form of notice is required by the statute as preliminary to further proceedings for the condemnation of property, the giving of such notice is essential. *Commonwealth* v. *Metcalf*, 2 Mass. 118. *Commonwealth* v. *Chase*, 2 Mass. 170. *Commonwealth* v. *Sheldon*, 3 Mass. 188. *Stone* v. *Boston*, 2 Met. 220. *Grace* v. *Newton Board of Health*, 135 Mass. 490, 496, 497. *Hall* v. *Staples*, 166 Mass. 399, 402.

It is to be observed that by the statute the power to determine that land shall be taken is not given to any other body than the board of street commissioners with the approval of the mayor. They

are not to take land as a matter of course upon the request of any department. The provision is simply that they "may take;" and if they do so, they must do it in the manner prescribed. They may not base their action upon the mere request of another department, for it is only by them that the taking can be made; it is only their determination of the public convenience that gives the power to act; and the authority which thus has been entrusted to them cannot be delegated to others. *Kean* v. *Stetson,* 5 Pick. 492. *Harris* v. *Marblehead,* 10 Gray, 40, 44. *Higginson* v. *Nahant,* 11 Allen, 530, 534.

It is not necessary to discuss the other points which have been argued. There is no pretence that the requirements of the statute have been observed.

The prosecution of this petition is not barred by any laches. The petitioner gave early notice of its position, and filed its petition within a reasonable time. It is not responsible for any delay in the filing of answers. Nor, so far as the granting of the writ of certiorari is a matter of discretion, ought the prayer of the petition to be refused. The taking was invalid; the property sought to be taken remains in the petitioner, and it is better for the interests of all parties that the case now should be determined without the expense of further litigation and before any other expenditures, perhaps fruitless, shall have been made.

The writ of certiorari must be issued and the taking by the respondents must be quashed.

*So ordered.*