THE STATE WATER SUPPLY COMMISSION OF THE STATE OF NEW YORK, Respondent, *v.* HENRY B. CURTIS, Appellant.

1. CONSTITUTIONAL LAW — CONSTITUTIONALITY OF ACT ESTABLISHING COMMISSION FOR REGULATION OF FLOW OF WATERCOURSES IN THIS STATE (L. 1904, CH. 734). Chapter 734 of the Laws of 1904, establishing a commission for the regulation of the flow of watercourses in this state, the powers of which commission have since, pursuant to chapter 418 of the Laws of 1906, been transferred to the state water supply commission, cannot be held to be unconstitutional upon the ground that it makes no sure and adequate provision for the payment to landowners of compensation for land to be taken for the purposes of the act. While it is provided by section 6 thereof that the commission " may enter upon any land * * * for the purposes of this act," it is followed by a provision for compensation to the owner if the sum can be agreed upon, and, if no agreement can be reached, it is also provided by section 7 that title to the lands shall be acquired under the Condemnation Law, by the provisions of which a plaintiff in condemnation proceedings may enter into possession of land condemned only after payment of compensation therefor.

2. SAME. A suggestion that the act is unconstitutional because, by the institution of condemnation proceedings, a cloud is placed upon the title to the defendant's property which may prevent him from selling or disposing of the same, cannot be sustained, since the statute does not assume to create any lien upon the property comprised in the improvements for which it provides, nor does any proceeding thereunder create any legal obstacle to the free control and disposition of such property prior to its acquisition upon actual payment to the owner.

3. SAME. Nor is the statute unconstitutional as failing to provide for reasonable notice, to persons interested, of proceedings to be taken under

the provisions thereof. The act requires notice to be given to all parties whose property may be taken, and affords them an opportunity to be heard before the commission is authorized finally to determine that the proposed improvement shall be made. This is sufficient, and it matters not that the preliminary determination, as to whether the regulation of the watercourse is of sufficient importance to warrant the interference of the state, may be made upon the petition alone, since such preliminary determination of itself has no effect upon the rights of persons whose property may be required to carry out the improvement after it has been determined upon.

*State Water Supply Com.* v. *Curtis,* 125 App. Div. 117, affirmed.

(Argued May 26, 1908; decided June 12, 1908.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered April 23, 1908, in favor of plaintiff, upon the submission of a controversy under section 1279 of the Code of Civil Procedure.

The Appellate Division, in the order permitting the appeal, certified five questions to this court:

1st. Is chapter 734 of the Laws of 1904 unconstitutional in that it authorizes the taking of property for the purposes of the act without just compensation?

2nd. Is such Act unconstitutional in that it fails to make provision for the establishment of a definite tax district with precise boundaries prior to the creation of an indebtedness for the improvement contemplated by the act?

3rd. Is such Act unconstitutional in that it fails to provide for reasonable notice, to the persons interested, of the proceedings to be taken by the plaintiff commission under the provisions of said Act?

4th. Is such Act unconstitutional in that it authorizes the taking of the defendant's land for the purposes of the improvement, upon the theory that the public health and safety require the same, whereas, it permits the assessment of the expense. of such improvement upon property upon the basis of benefit thereto not related to the public health or safety?

5th. Is such Act unconstitutional for any other reason?

The nature of the controversy and the facts, so far as material, are stated in the opinion.

*John F. Connor* for appellant. Chapter 734, Laws of 1904, is unconstitutional in that it makes no sure and adequate provision for the payment to the landowner of a just compensation for the land to be taken for the purposes of the act. (*Matter of South Market St.*, 67 Hun, 594; *Sage* v. *City of Brooklyn*, 89 N. Y. 189; *Brewster* v. *Rogers Co.*, 169 N. Y. 73; *Chapman* v. *Gates*, 54 N. Y. 132; *Mitchell* v. *Vil. of White Plains*, 62 Hun, 231; *People* v. *Hayden*, 6 Hill, 359.)

*Lockwood R. Doty* for respondent. Chapter 734 of the Laws of 1904 is not unconstitutional upon the ground that it makes no sure and adequate provision for the payment to the landowner of a just compensation for the land to be taken for the purpose of the act, inasmuch as by the express terms of the act property can only be taken for the purposes of the improvement by means of condemnation proceedings conducted for that purpose in precisely the same manner as land is taken under the right of eminent domain in ordinary cases. And it is only upon actual payment of the compensation for the land as determined by the commissioners in condemnation that the respondent is entitled to enter into the possession of the property and take and hold it for the public use. (Code Civ. Pro. § 3371; *Vil. of St. Johnsville* v. *Smith*, 184 N. Y. 341; *Litchfield* v. *Bond*, 186 N. Y. 66; *People ex rel. Simpson* v. *Wells*, 181 N. Y. 252; *Waller* v. *State*, 144 N. Y. 579; *People ex rel. Jackson* v. *Potter*, 47 N. Y. 375; *Smith* v. *People*, 47 N. Y. 330; *S. W. W. Co.* v. *Vil. of Skaneateles*, 161 N. Y. 154; *Matter of Vil. of Middletown*, 82 N. Y. 196; *Keating* v. *Gunther*, 32 N. Y. S. R. 1112; *Matter of City of New York*, 118 App. Div. 224; *Forster* v. *Scott*, 136 N. Y. 577.) The act of 1904 is not unconstitutional and defective upon the ground that it provides no sufficient notice

and affords no sufficient opportunity to the parties interested to be heard. (*Matter of Zbrowski,* 68 N. Y. 88; *People* v. Smith, 21 N. Y. 595; *Matter of Tuthill,* 163 N. Y. 133; Code Civ. Pro. § 3360; *Matter of City of Amsterdam,* 126 N. Y. 158; *Matter of Vil. of Middletown,* 82 N. Y. 196; *Matter of Mayor, etc.,* 99 N. Y. 569; *Overing* v. *Foote,* 65 N. Y. 263; *People* v. *Feitner,* 81 App. Div. 118; *Donovan* v. *City of Oswego,* 90 App. Div. 337; *P. R. Co.* v. *Buffalo,* 29 App. Div. 160; *Matter of De Peyster,* 80 N. Y. 565.)

WILLARD BARTLETT, J. By chapter 734 of the Laws of 1904 the legislature established a permanent commission for the regulation of the flow of watercourses in this state in aid of the public health and safety to be known as the river improvement commission. In 1906 all of the powers and duties of the river improvement commission as thus created and established were transferred to and devolved upon the state water supply commission. (Laws of 1906, chap. 418.)

The present controversy relates to the right of the state water supply commission to regulate the flow of Canaseraga creek, a watercourse in the county of Livingston, for. a distance of about fifteen miles between North Dansville and the point of confluence of the creek with the Genesee river. A petition was duly presented to the commission by persons severally possessing riparian rights in Canaseraga creek setting forth that its restricted flow through certain specified towns was a menace to the public health and safety and praying that the flow of water in such watercourse should be regulated under the provisions of chapter 734 of the Laws of 1904, so far as necessary for that purpose. The state water supply commission forthwith duly determined that the relief prayed for in the petition should be granted and that the regulation of the flow of said watercourse was of sufficient importance to the public health and safety to warrant the interference of the state under the provisions of the statute. The various steps of intermediate procedure prescribed by the act of 1904 were taken and the commission duly made a final determina-

tion that the proposed improvement should be made. Its final order to this effect was approved by the legislature by the enactment of chapter 195 of the Laws of 1907; and the commission subsequently entered into a contract with the lowest responsible bidders for the work required for said improvement and regulation of the flow of Canaseraga creek.

The defendant owns a parcel of land which is sought to be acquired by the state water supply commission in this proceeding. The agreed statement of facts recited that "in the judgment of said Commission, duly declared and determined by it, and as a matter of fact, it was and is necessary to take and appropriate the said described lands and property for the purposes of such proposed improvement; and that the public use for which the said property is required is the regulation of the excessive, restricted or irregular flow of water in said Canaseraga Creek, being a water course as aforesaid, or in its tributaries, for the preservation of the public health and safety, which is now menaced thereby, under the provisions of said Chapter 734 of the Laws of 1904." It is agreed that a reasonable compensation and purchase price for the defendant's property is the sum of $225. The state water supply commission, however, has been and is unable to agree with the owner for its purchase although it has tendered him that amount; because the defendant has refused to accept the said sum, or any other sum, and has refused to sell or convey the property upon the ground that the provisions of chapter 734 of the Laws of 1904 are unconstitutional and void. Upon this refusal the state water supply commission instituted condemnation proceedings for the acquisition of the property in question under the Condemnation Law. The defendant appeared and demurred to the petition. The proceeding thus commenced was discontinued by agreement of the parties thereto for the purpose of presenting this written submission of controversy to the Appellate Division.

It further appears from the terms of the submission that the lands of the defendant proposed to be acquired by the condemnation proceedings constitute part of a farm of about 217

acres, of which approximately 200 acres are subject to overflow from Canaseraga creek, and that a portion of the expense of such regulation is to be assessed under chapter 734 of the Laws of 1904 against that part of the defendant's farm thus subject to overflow. No apportionment of the expense to be incurred by the regulation of the watercourse and the making of the proposed improvement has heretofore been made among the individual owners.

Some of the members of this court doubt whether the Code of Civil Procedure contemplates the certification of questions by the Appellate Division on an appeal from a judgment in a submitted controversy; but as no objection has been made to the procedure herein, in this or any other respect, we have assumed it to be regular for the purposes of this appeal and as between these parties.

Upon the agreed statement of facts which was before the Appellate Division and now comes before us, the principal question presented for the determination of the Supreme Court, and the only question discussed in the opinions, was whether the state water supply commission is entitled to acquire the lands of the defendant by the exercise of the power of eminent domain. This necessarily involves a determination as to the constitutionality of chapter 734 of the Laws of 1904, so far as it is attacked on the ground that it authorizes the taking of property for the purposes of the act without just compensation. The facts set out in the submission also fairly raise the question of the sufficiency of the notice provided for by the statute. It does not seem to us, however, that the other specific questions certified by the learned Appellate Division really arise upon the facts as they are now made to appear. We shall, therefore, endeavor to answer only the first and third questions.

A summary statement of the provisions of the act in question is necessary to an intelligent comprehension of the questions presented. The first section establishes the river improvement commission, which has been succeeded by the state water supply commission. The second section provides.

that any municipality located upon a river or watercourse, or any person possessing riparian rights thereon, may present a petition to the commission showing that the flow thereof is a menace to the public health and safety and praying that the same shall be regulated.   The third section makes it the duty of the commission on receipt of such petition forthwith to determine whether the regulation of the flow of any such river or watercourse is of sufficient importance to public health or safety to warrant the interference of the state.   If it determine that the relief prayed for shall be granted the commission must make such preliminary surveys as may be proper to determine the causes of the excessive, restricted or irregular flow and the available means to correct the same for the preservation of the public health and safety.   The fourth section provides how plans and specifications for the proposed improvement and maps of the lands to be taken shall be made. It contains the following specific provision : " The commission or the members thereof may enter upon such lands as the commission shall deem necessary for the purpose of doing such work, either by themselves or by their engineers, agents or servants employed by them for that purpose."   The commission is also required to prepare a list of the counties, towns, cities, villages and individual properties which in its judgment will be benefited by the improvement, together with a statement of the proportional share of the total cost which should be borne by such municipalities respectively and by the individual owners of the properties benefited collectively expressed in decimals.   Provision is made for hearings upon notice to the parties interested, these preliminary maps, plans, specifications and statements being used as a basis of such hearings.   After the commission finally determines that the proposed improvement shall be made it must make a final order to that effect and prepare a final map, detailed plans, specifications and estimates of the total cost, but no such improvement shall be undertaken under the act until the final order is approved by the legislature.   After the legislative approval has been obtained the commission is required by the

fifth section of the statute to advertise for bids and proposals and to enter into a contract with the lowest responsible bidders for the work to be done.   Sections six and seven contain provisions in regard to the institution of condemnation proceedings, if necessary, which will be considered more fully hereafter.   Subsequent sections of the statute provide for the apportionment by the commission of the total cost of the improvement, including compensation for lands taken and damages suffered between the respective municipalities and individual properties which according to its previous determination are benefited by the improvement.   Before this apportionment becomes final there must be a public hearing upon notice to the parties interested therein.   Whenever the commission determines that any portion of the total cost of the improvement shall be borne by the individual properties benefited, the apportionment must be made in the manner specially prescribed by the statute which is not material to the question here.   A final statement must be made by the commission of the cost of the improvement and of the apportionment and assessment thereof and the amount of benefit is to be levied and assessed as provided in the tenth section which declares: " Upon the assessment by the commission of the benefits as provided in this section, the amounts apportioned shall be and remain charges against the several municipalities and liens upon the several parcels of property charged therewith, until paid or otherwise removed, superior in force and effect to all other liens except unpaid general taxes."   The moneys collected are to be paid in the first instance to the county treasurer and by him to the state comptroller who shall deposit the same to the credit of the river improvement fund.   Finally the commission is authorized to issue bonds to pay the cost of improvements under the act, and also to issue interest-bearing certificates of indebtedness to provide temporarily for the expenditures which must be made before the proceeds from the sale of the bonds become available.

In the present proceeding the state water supply com-

1908.]    State Water Supply Com. *v.* Curtis.    327

N. Y. Rep.]    Opinion of the Court, per Willard Bartlett. J.

mission determined that the individual and corporate owners of the property affected by the proposed improvement were solely benefited thereby, and that the whole cost should be borne by them collectively — that is to say, that neither the state nor any political subdivision thereof was to contribute anything towards the expense of the project.

Sections six and seven, to which particular reference must be made, read as follows :

" § 6. The commission may enter upon any land, structures and waters which in its judgment shall be necessary to enter upon for the purposes of this act. If the owner of any property to be taken shall agree with said commission upon the sum to be paid therefor, or for any damages sustained, such sum shall be paid as hereinafter provided as part of the necessary expense incurred in carrying out any improvement under the provisions of this act.

" § 7. If the commission cannot agree with the owners upon the compensation and damages to be paid for the property to be so taken and appropriated the commission shall thereupon serve upon such persons a notice that the lands and property described therein have been appropriated by the state for the purposes of this act, and shall proceed to acquire title thereto under the provisions of title one of chapter twenty-three of the code of civil procedure, known as the condemnation law."

It is the contention of the appellant that chapter 734 of the Laws of 1904 is unconstitutional because it makes no sure and adequate provision for the payment to the landowner of a just compensation for the land to be taken for the purposes of the act. He invokes the doctrine which has nowhere been better stated than in the case of *Sage* v. *City of Brooklyn* (89 N. Y. 189), that " a law authorizing the taking of a man's land, and remitting him for his sole remedy for compensation to a fund to be obtained by taxation of certain specified lands in a limited district, according to benefits, is not a sure and adequate provision, dependent upon no ' hazard, casualty or contingency what-

ever,' such as law and justice require to meet the constitutional requirement." If this statute according to its fair import and meaning authorizes the state water supply commission to take possession of lands sought to be acquired for the purposes of river improvement thereunder without first making adequate compensation therefor then it is undoubtedly in conflict with the Constitution. It nowhere assumes to pledge the credit of the state or any political subdivision thereof for the payment of compensation to the landowners. We can discover no language in the act which can be construed to have any such effect, nor indeed, is it easy to perceive what security is afforded for the payment of the bonds or the certificates of indebtedness which the state water supply commission is authorized to issue, except the proceeds of the assessments if they shall be collected. If, therefore, the statute be taken to authorize the appropriation of lands and the permanent occupation thereof by the state water supply commission (that is to say, the permanent occupation thereof as distinguished from the temporary occupation merely for purposes of preliminary survey, etc.) without previous payment of the fair value thereof to the owner as ascertained either by agreement or fixed in condemnation proceedings, it must necessarily be condemned as in conflict with the fundamental law. The learned counsel for the appellant insists that the provisions in regard to condemnation proceedings in section 7, when taken in connection with the provisions of section 6 and other parts of the statute, manifestly contemplate an appropriation of the lands prior to the institution of proceedings to condemn and, therefore, necessarily prior to payment. If he is right in this respect he is entitled to prevail upon the present appeal. I take an entirely different view, however, as to the scope, meaning and effect of those sections. If they are capable of two constructions, one of which will uphold the validity of the statute and the other result in its condemnation we are bound to adopt that view which will give validity to the enactment. "As every presumption is in favor of a statute, if it is open to two constructions, one of which would obey and the

other violate the Constitution, the universal rule of courts is to select the former. No statute should be declared unconstitutional if by any reasonable construction it can be given a meaning in harmony with the fundamental law." (*People ex rel. Simpson v. Wells,* 181 N. Y. 252, 257.) It seems to me that there is no difficulty whatever in construing this statute as entirely consistent with that provision of the Constitution which prohibits the legislature from taking private property for public use without just compensation. While section 6 does provide that the state water supply commission "may enter upon any land, structures and waters which in its judgment shall be necessary to enter upon for the purposes of this act," it is followed by a provision for the payment of compensation to the owner, if the sum to be paid therefor can be agreed upon, and in section 7 we have the further express provision that if the commission cannot agree with the owners upon the compensation and damages to be paid for the property it shall serve a notice that the lands have been appropriated, "*and shall proceed to acquire title thereto under the provisions of title one of chapter twenty-three of the code of civil procedure, known as the condemnation law.*" Referring to the Condemnation Law, we find in section 3371 of the Code of Civil Procedure a statement of what the final order must contain upon the confirmation of the report of the commissioners: "If the report is confirmed, the court shall enter a final order in the proceeding, directing that compensation shall be made to the owners of the property, pursuant to the determination of the commissioners, *and that upon payment of such compensation,* the plaintiff shall be entitled to enter into the possession of the property condemned, and take and hold it for the public use specified in the judgment." It is only upon the payment of the compensation that the plaintiff may either enter into the possession of the land or occupy it. Until the amount fixed by the judgment has been paid to the landowner, the plaintiff in the condemnation proceeding has no right of entry or occupation. This is surely adequate protection. Counsel who represented the

state water supply commission upon this appeal makes no claim in conflict with this view, and probably for the very good reason that if such claim were asserted and upheld it would be fatal to the act.

In the dissenting opinion below it is suggested that the act is unconstitutional because by the institution of condemnation proceedings a cloud is placed upon the title to the defendant's property which may prevent him from selling or disposing of the same. This objection would be equally applicable to condemnation proceedings under the Railroad Law and many other statutes. I do not think it is substantial. The statute does not assume to create any lien upon the property comprised in the improvements for which it provides, nor does any proceeding thereunder create any legal obstacle to the free control and disposition of such property prior to its acquisition upon actual payment to the owner.

The question whether chapter 734 of the Laws of 1904 is unconstitutional, "in that it fails to provide for reasonable notice to the persons interested of the proceedings to be taken by the plaintiff commission under the provisions of said act," requires little discussion. The legislature possesses the power to authorize the scheme of river improvement contemplated by the statute, to regulate the flow of watercourses in aid of the public health and safety. (See *Matter of Tuthill*, 163 N. Y. 133; *Smith* v. *City of Rochester*, 92 N. Y. 463, 477.) The foregoing epitomized statement of the provisions of the statute shows that the act requires notice to be given to all parties whose property may be taken, and affords them an opportunity to be heard before the state water supply commission is authorized finally to determine that the proposed improvement shall be made. This is sufficient. It matters not that the preliminary determination, to the effect that the regulation of the watercourse in question is of sufficient importance to warrant the interference of the state, may be made upon the petition alone. The *preliminary* determination of itself has no effect upon the rights of persons in the situation of the defendant. It does not become thus

effective unless or until it is followed by a *final* determination upon notice, which final determination must itself be be confirmed by an act of the legislature.

The judgment of the Appellate Division should be affirmed, with costs. The first and third questions certified are answered in the negative, the other questions are not answered.

CULLEN, Ch. J., GRAY, HAIGHT, VANN, WERNER and CHASE, JJ., concur.

Judgment affirmed.