(153 App. Div. 587.)

PEOPLE ex rel. BINGHAM v. STATE WATER SUPPLY COMMISSION.

(Supreme Court, Appellate Division, Fourth Department.  November 13, 1912.)

1. APPEAL AND ERROR (§ 855*)—SCOPE OF REVIEW—MODE OF TRIAL BELOW.
   Where the trial court proceeded upon the first of two alleged grounds, and decided that proceedings by the state board of water supply were ineffectual and void for lack of jurisdiction, the second ground of attack, not passed upon below, should not be determined by the Appellate Division in the first instance.
   [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3406; Dec. Dig. § 855.*]

2. NAVIGABLE WATERS (§ 7*)—SCHEME FOR IMPROVEMENT—WATER SUPPLY COMMISSION—DEEPENING DITCHES.
   Under Laws 1904, c. 734, establishing a commission for the regulation of water courses in aid of public health, section 4 of which provides that, if such commission shall determine that a more beneficial flow of water in a water course can be had by improvement thereof, it may make the same, the commission, in remedying an unhealthful, miasmatic condition upon lowlands in a river basin, can deepen, lengthen, and straighten miles of artificial ditches, and construct a comparatively small amount of new ditches, although such a scheme would incidentally increase the value of the land in the basin.
   [Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. § 18; Dec. Dig. § 7.*]

   Foote, J., dissenting.

Appeal from Special Term, Livingston County.

Certiorari by the People, on the relation of Charles W. Bingham, as trustee under the will of Lucius C. Bingham, deceased, against the State Water Supply Commission.  From an order entered in the clerk's office of the county of Livingston May 15, 1911, sustaining a writ of certiorari herein, and excluding the lands of the relator from the assessment district, also from an order entered in said clerk's office March 31, 1911, denying appellant's application for leave to file a further or supplemental return to such writ (70 Misc. Rep. 265, 126 N. Y. Supp. 637), defendant appeals.  Order setting aside the proceedings of the Commission reversed, and appeal from order denying leave to file further return dismissed.

Argued before McLENNAN, P. J., and KRUSE, ROBSON, FOOTE, and LAMBERT, JJ.

Eugene Lamb Richards, of New York City, for appellant.
John M. Hastings, of Mt. Morris, for respondent.

LAMBERT, J.  The proceeding is certiorari to review a determination of the appellant.  That determination, so to be reviewed, was made in proceedings instituted under the provisions of chapter 734 of the Laws of 1904.  The general plan of that statutory enactment and the steps essential to confer jurisdiction have been heretofore fully discussed by the Court of Appeals, and more especially with reference to the constitutionality of the act.  State Water Supply Commission v. Curtis, 192 N. Y. 319, 85 N. E. 148.  That decision relieves us from

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the necessity of discussing those general features of the act. The review sought in this proceeding is in conformity with the provisions of section 12a of the State Boards and Commissions Law (chapter 56, Laws of 1909 [Consol. Laws 1909, c. 54]), which statute now covers the powers of this commission. The issues present but two questions of moment; i. e., (1) whether the plan of improvement, sought by the petitioner and determined upon by the appellant, is authorized by and in conformity with the statute invoked, which question involves the legality of the entire proceedings by appellant; and (2) whether the lands of the relator should be included within the improvement district, if the proceedings be lawful.

[1] The decision of the trial court proceeded upon the first of these grounds, and it was there decided that the proceedings by appellant were ineffectual and void, for lack of jurisdiction. The second ground of attack was not passed upon, and, in my opinion, should not be determined by this court, in the first instance.

[2] The contemplated improvement involves the basin of Canaseraga creek, in the county of Livingston. The area drained by that stream comprises an area of about 340 square miles. This lies in a long, narrow valley, with an average width of 1½ miles and containing upwards of 11,000 acres, the larger part of which is aptly described as flat lands. Through this valley, the Canaseraga runs in a winding and tortuous course, along which its waters travel some 22 miles in passing from end to end of the improvement district. Into this main stream, from either side, flow various smaller tributaries, the most important of which is the Keshaqua, with its drainage area about 82 square miles. From the upper end of the proposed district to its point of union with the Genesee river at Mt. Morris, the Canaseraga has a fall of about 70 feet. Thirty-five feet of such fall is within the first 6 miles at the southerly end of the district, and 20 feet within a comparatively short distance of the northerly end. Throughout the remaining large portion of the district, the stream has a very slight fall, and its banks are low and unstable.

Floods are of frequent occurrence in this basin. They are caused both by melting snows and by heavy rainfall within the drainage areas of the Canaseraga and the Genesee. At times they occur in connection with flood conditions upon the Genesee, and at other times are confined to the Canaseraga. Relator claims to have shown their occurrence to depend largely upon flood conditions in the Genesee river; but all agree that, whatever the cause, when they do occur, the channels of the Canaseraga and its tributaries become swollen, and the waters leave their banks and spread out over the flat lands. As the floods subside, the water gradually recedes, except as it is collected in low places, and the repeated flooding, in years gone by, has produced, or helped to produce, a swampy or marshy condition throughout large areas. From such causes an unhealthful miasmatic condition, throughout these lowlands, has prevailed and has become so pronounced as to afflict a large proportion of the inhabitants with malaria and kindred secondary ailments.

Such, in very general outline, was the condition which the appellant

was asked and undertook to remedy, under the statute referred to. Except in the one particular, upon which the case was determined below, the procedure adopted is beyond serious criticism, and it could serve no useful purpose to review the various steps in detail. It suffices to say that all statutory requirements leading up to the making of the determination here attacked have been complied with. The undertaking, involving the essential element of the preservation of the public health, is permitted by statute, and is lawful in the first instance. The means, indicated by the statute to accomplish this object, is the control and regulation of the flow of the water in the water courses. The plan, as finally developed and adopted, had as its aim the securing of a more expeditious run-off of these flood waters. While it may allay to some extent the floods themselves, the plan looks rather to the alleviation of the conditions following floods. By securing such quicker run-off, it is expected to improve the unhealthful condition, necessarily resulting from the stagnation of water, after the floods have receded.

The plan involves, primarily, the straightening, widening, deepening, and clearing up of the channels of the main stream and its tributaries, and the shortening of the main stream by some 6 miles. This portion of the scheme affords no criticism, as not being within the statute. It was found and determined, however, that this alone did not carry the plan to a practical accomplishment. Floods would still occur, even with the straightened and improved channels. Particularly would this be true when the Genesee river was in flood, as then the waters of that stream, coming from a watershed of about 1,070 square miles and being larger in volume, would form a dam (so to speak) across the mouth of the Canaseraga, causing the waters of that stream to accumulate and overflow the lowlands. Since it was clearly impossible to confine these streams to their channels in flood times, the engineering problem was presented to return these flood waters to the channels as expeditiously as possible following the floods.

The surveys disclosed several long ditches or waterways, theretofore constructed, connecting with the main stream and so located as to easily catch and return to the stream great quantities of these overflow waters. These ditches are several miles in length and have become obstructed from disuse and lack of care. The improvement of these and the construction of a comparatively small amount of new ditches, of a similar character and similarly located, were finally adopted as the most available means to the end sought, and, in fact, the only plan within the limits of reasonable expenditure. It has been determined that such construction would, in large measure, catch and hold such waters as overflowed the banks of the streams, and return such waters to the thread of the streams at locations where the banks are of such a character as to retain them. That this would obviate, to a great extent, the unhealthfulness of this section, seems well supported by the proof. The feasibility of the plan appears well established. The commission, through engineers of evident ability, has devoted much time to investigation of the actual physical conditions of the tract involved, and the conclusion reached is well supported, both

by past experience and from a mathematical and engineering stand-point.

The court below determined that the feature of the plan, involving the construction of the ditches, is not within the scope of the statute invoked; that such construction is too far removed from the regulation of the flow of waters in water courses, to be classed as a river or water course improvement; that the same is purely a drainage project, and as such can only be obtained under the provisions of the Drainage Law. The means and authority, at the command of the commission, in the accomplishment of the desired end, are defined by section 4 of chapter 734 of the Laws of 1904, in the following words:

"4. If such commission shall determine that a more beneficial flow of water in such river or water course can be had, by construction of dykes, clearing out or changing the channel, the erection of a dam or dams or other public works thereon, or upon any tributary thereof, it shall cause to be made. ✳ ✳ ✳"

It must be conceded that this project is lawful and that it involves the regulation of the flow of water in water courses, and there only remains to determine whether the means available under the statute are sufficient to authorize the carrying out of the plan here contemplated.

The statute clearly includes and permits constructions designed to prevent the escape of the waters from the streams in the first instance. Such would be included within the term, "dykes." The construction of dams and the alteration of the channels of the streams are also expressly permitted. Such three classes of expressly permitted constructions would appear to cover every possible class of work upon the actual channels of the streams. But the further permission is given to construct "other public works" upon the water course or its tributaries. This was evidently designed to cover such other public works as should be found essential to the main scheme of the act; i. e., the regulation of the flow of the water in the channels. To limit the location of those public works to the actual channels themselves would be a narrow construction, and one calculated to oftentimes defeat the plain purpose of the act. The limitation of such public works to the stream and its tributaries, when read with the rest of the section, would appear to be a limitation in purpose rather than in physical location. Such construction permits any work of a public nature which looks to and has for its purpose the fulfillment of the end sought in the regulation of the flow of water in the streams. Such appears to be the scope of the section, and such a construction is not strained, looking as it does to the furtherance of the general plan of the legislation.

With the statute so construed, the construction and repair of these ditches becomes but a detail, rendered imperative by the circumstances of the case. They do not change or alter the general purpose of the improvement. In my opinion, the plan is not open to criticism by reason of its involving the incidental drainage of small portions of this adaptable farm land. Such incidental drainage is present to some

degree in every improvement of this character. The plan does involve the confining of these streams to their channels, so far as practicable, and the expeditious return of the flood waters to the channels, when circumstances prohibit their original retention therein. Such a purpose we believe to be lawful and within the scope of this statute.

Much proof was taken and returned of the great increase in land values and productiveness which would follow this improvement. This has tended, perhaps, to accent the idea that this was a drainage project. In this connection it is to be noted that the plan of assessment, outlined by the statute is based upon the benefits received. Such benefits would include increase in value and productiveness, and the proof was material upon that issue. That benefits of a private nature would follow public undertakings of this character was evidently in contemplation, when the assessments were made to depend upon the benefits. This private gain furnishes no ground for criticism of the public nature of the undertaking. It is an incident, and should not be permitted to defeat the primary and public beneficial purpose of this remedial statute law of the state.

The foregoing views lead to a reversal of the order excluding relator's lands from the improvement district, with costs. This conclusion renders it unnecessary to determine the appeal from the order denying leave to file a further return, as such appeal could serve no useful purpose, whichever way it might be determined. The appeal from such last-mentioned order should be dismissed. All concur, except FOOTE, J., who dissents upon the opinion of SUTHERLAND, J., delivered at Special Term. See 70 Misc. Rep. 265, 126 N. Y. Supp. 637.