THE PEOPLE OF THE STATE OF NEW YORK ex rel. CHARLES W. BINGHAM, as Trustee under the Will of LUCIUS C. BINGHAM, Deceased, Appellant, *v.* THE STATE WATER SUPPLY COMMISSION, Respondent.

**Water and watercourses — powers of state water supply commission in regulating the flow of a river, or watercourse, and undertaking any drainage incidental thereto.**

The statute (L. 1904, ch. 734, § 4; re-enacted in the State Boards and Commissions Law, Cons. Laws, ch. 54) authorizes the state water supply commission to take action to regulate the flow of any river or watercourse to promote the public health or safety when the commission "shall determine that a more beneficial flow of water in such river or watercourse can be had by construction of dykes, clearing out or changing the channel, the erection of a dam or dams or other public works thereon, or upon any tributary thereof." The fact that such an improvement incidentally involves to some extent the drainage of adjacent lands does not invalidate the improvement scheme, since the statute itself manifests the legislative intent that the commission may undertake any incidental work that will aid in regulating the flow of the stream which is to be improved.

*People ex rel. Bingham* v. *State Water Supply Commission*, 153 App. Div. 587, affirmed.

(Argued June 18, 1913; decided October 21, 1913.)

APPEAL from an order of the Appellate Division of the Supreme Court in the fourth judicial department, entered November 13, 1912, which reversed an order of Special Term setting aside as illegal and void a determination of the defendant commission assessing lands of the relator for a river improvement.

The facts, so far as material, are stated in the opinion.

*J. M. Hastings* and *George H. Starr* for appellant. The main purpose of the project is to establish a new and complete system of drainage over a large area whereby the farm lands there can be made very productive and valuable, and the changes proposed in the creek are but

an adjunct to the main purpose, whereby the creek can be made to serve as a better outlet for the new drainage district than it would be if left in its present condition. This is clearly a private enterprise, entered into for the private gain and advantage of the promoters, who are the petitioners, all of them the owners of lands which are sought to be drained. Because the main purpose of the project in question is a private one, the bringing of relator's lands into the assessment district and imposing an assessment upon his land to defray part of the expense thereof is unlawful. (*Brewster* v. *Rogers Co.,* 169 N. Y. 73; *Noonan* v. *City of Albany,* 79 N. Y. 470; *Poth* v. *Mayor,* 151 N. Y. 16; *People* v. *Hagadorn,* 104 N. Y. 516; *Seifert* v. *City of Brooklyn,* 101 N. Y. 136; *Hoffmire* v. *City of Brooklyn,* 162 N. Y. 584; *People ex rel. Parker* v. *County Court,* 55 N. Y. 604; *Matter of Jacobs,* 98 N. Y. 98; *Matter of Chesebrough,* 78 N. Y. 232; *Stuart* v. *Palmer,* 74 N. Y. 183; *Brevoort* v. *Grace,* 53 N. Y. 245; *People ex rel. More* v. *Jefferson County Court,* 56 Barb. 136; *Matter of Van Buren,* 79 N. Y. 331; *Wiesmer* v. *Village of Douglas,* 64 N. Y. 91.) The entire proceeding is void and unconstitutional because the general drainage laws, passed pursuant to the Constitution, prescribe what proceedings may be brought by the owners of agricultural lands for the drainage of the same over the lands of others, and the kind and nature of such proceedings, and because this proceeding is not brought under authority of said drainage laws, but in violation thereof. (*Matter of Tuthill,* 163 N. Y. 133.)

*Eugene Lamb Richards* and *Lockwood R. Doty* for respondent. The determination of the commissioners that the regulation of the Canaseraga was of sufficient importance to warrant the interference of the state was valid and cannot be attacked. (*S. W. S. Comm.* v. *Curtis,* 192 N. Y. 330; *D. & H. C. Co.* v. *City of Buffalo,* 39 App. Div. 333; *People ex rel.* v. *Board of Health,*

140 N. Y. 1; *Matter of Church St.*, 49 Barb. 455; *Matter of Cruger*, 84 N. Y. 619; *People ex rel. Cook* v. *Nearing*, 27 N. Y. 306; *Matter of Tuthill*, 163 N. Y. 133–142.) The improvement was not illegal and void as a drainage scheme under special legislation forbidden by the Constitution. (*S. W. S. Comm.* v. *Curtis*, 192 N. Y. 328; *People ex rel. Simpson* v. *Wells*, 181 N. Y. 252; *People ex rel. Cook* v. *Nearing*, 27 N. Y. 306; *Hartwell* v. *Armstrong*, 19 Barb. 166; *Beekman* v. *S. & S. R. R. Co.*, 3 Paige, 73; *People* v. *Supervisors*, 112 N. Y. 585; *People* v. *Banks*, 67 N. Y. 568; *Matter of Woolsey*, 95 N. Y. 135; *Swikehard* v. *Michels*, 8 Misc. Rep. 568; 81 Hun, 325; *Foster* v. *Scott*, 136 N. Y. 577.)

WILLARD BARTLETT, J.   This is a river improvement proceeding instituted under chapter 734 of the Laws of 1904, the substantial provisions of which have been re-enacted in the State Boards and Commissions Law (Laws of 1909, chap. 56).   The constitutionality of that statute was attacked by the appellant but upheld by this court in the case of *State Water Supply Commission* v. *Curtis* (192 N. Y. 319).   Two objections to the act were considered in that case: (1) That it authorized the taking of property without just compensation; and (2) that it failed to provide for reasonable notice to the persons interested of the proceedings to be taken by the state water supply commission under its provisions.   Both of these objections were held to be untenable.

The present proceeding relates to the improvement of the same stream — Canaseraga creek in the county of Livingston.   After the state water supply commission had finally determined that the proposed improvement should be made, its order to that effect was duly approved by the legislature (Laws of 1907, chap. 195).   This was followed by a determination as to the lands and property to be benefited by the proposed improvement, which determination included the lands of the relator.

Section 120 of the State Boards and Commissions Law provides that such a final determination can be reviewed in like manner as a review is had of a determination of a board of assessors in making an assessment. This method is prescribed by section 291 of the Tax Law which provides for a review of assessments by means of a writ of certiorari returnable in the first instance before a Special Term of the Supreme Court. The determination of the state water supply commission including the lands of the relator in the river improvement district in question was duly brought before a Special Term of the Supreme Court for review in accordance with those provisions of law. The state water supply commission made a full return of its proceedings in compliance with the command of the writ of certiorari and documentary and other proof was submitted to the court by the respective parties. Upon this hearing it appeared that the improvement scheme contemplated not simply and solely a regulation of the flow of Canaseraga creek and intersecting watercourses but that it involved to some extent the drainage of adjacent lands by means of opening old ditches and constructing some new ones. The learned judge who heard the case at Special Term deemed this feature of the plan of improvement fatal to the whole scheme, on the ground that the removal of the obstructions from the existing ditches and the construction of additional ditches could not be regarded as in any sense the improvement of a river or watercourse, holding the scheme to be one of drainage rather than one of river improvement. He argued that the proceeding should have been instituted and conducted under the drainage laws and could not properly be carried on under the statutes relating to river improvements.

The Appellate Division has taken an entirely different view. Referring in the first place to the statute under which the state water supply commission (now the conservation commission) derives its power over the

whole subject of river improvements we find that section 4 of chapter 734 of the Laws of 1904 authorizes the commission to take action to regulate the flow of a given river or watercourse to promote the public health or safety when it " shall determine that a more beneficial flow of water in such river or watercourse can be had by construction of dikes, clearing out or changing the channel, the erection of a dam or dams or other public works thereon, or upon any tributary thereof." This language plainly contemplates not merely the regulation of the flow of the principal stream itself but such incidental work as may tend to aid in regulating the flow so as best to promote the purposes of the improvement, to wit, the safety and health of the public. Thus, the statute itself manifests the legislative intent that the commission may undertake any incidental drainage that will aid in regulating the flow of the stream which is the principal subject of the improvement. A construction of the statute which forbade any improvement thereunder because it involved to some extent drainage work in addition to work designed to bring about a change in the flow of the stream would defeat the purpose of the law in many cases where some drainage might be essential in aid of the principal scheme.

We agree with the Appellate Division, therefore, that there is nothing in the law which invalidates a river improvement scheme merely because it involves incidentally drainage. Whether this particular improvement involved more than this was a question of fact as to which the Supreme Court in the Appellate Division has reached a different conclusion from that of the Supreme Court at Special Term. Upon this question of fact, I think, the decision of the Appellate Division is conclusive upon this court.

CULLEN, Ch. J., WERNER, CHASE, COLLIN, CUDDEBACK and HOGAN, JJ., concur.

Order affirmed, with costs.