In the matter of the proceedings by the MINNEAPOLIS RAILWAY TER-
MINAL COMPANY to acquire for its uses certain lands.

February 1, 1888.

**Eminent Domain—Necessity of Taking.**—A land-owner may oppose con-
demnation proceedings under the general statute, as respects his own
land, upon the ground that the proposed taking is not necessary.

**Same—Land of another Railway Co.—Default of Owner—Relief.**—A
railway (depot) company, (a piece of whose land was sought to be condemned
for the purposes of another railway company,) having suffered default
in the condemnation proceedings, but showing sufficient excuse for such
default, may be let in to oppose such proceedings, the same being opened
for that purpose, although the award of commissioners had been filed.
Gen. St. 1878, c. 66, § 125, is applicable to such proceedings.

**Same—Land held by Owner for Public Use.**—The moving papers upon
which such relief was sought construed as showing, upon their face, that
such applicant's interest in the property was such as would have enabled
it to appropriate the same to its own proper and necessary corporate pur-
poses.

**Same—Appeal from Award— Motion to Vacate Appointment.**— An
appeal from the award of commissioners (bringing in question only the
sufficiency of the damages) is not inconsistent with a proceeding to va-
cate the appointment of the commissioners, and to oppose the condemna-
tion proceedings.

**Practice — Order "without prejudice."**—The denial of a motion, "with-
out prejudice," does not bar the renewal of the motion.

The Minneapolis Railway Terminal Company commenced this pro-
ceeding in the district court for Hennepin county, to acquire for its
uses certain lands. Notice that the petition would be presented to
the court on June 11, 1887, was served upon the Minneapolis Union
Railway Company on May 28, 1887. On June 11, 1887, an order
was made reciting that the public interests require the prosecution
of the petitioner's enterprise, and that the lands described and pro-
posed to be taken are necessary therefor, and appointing commission-
ers to ascertain and determine the amount to be paid for the taking
of such lands. The Minneapolis Union Railway Company did not

appear in the proceeding till June 25, 1887, when it applied for leave to appear and oppose the petition. This application was denied "without prejudice" by *Lochren, J.* Thereafter the Minneapolis Union Railway Company renewed its application, asking that the order appointing commissioners be vacated, and that it be fully heard in respect to the taking and appropriation of this land. This application was heard upon affidavits, and an order denying it was made by the same judge. The Minneapolis Union Railway Company appeals from this order, and also from the order appointing commissioners.

*Benton & Roberts*, for appellant.

*J. D. Springer*, for respondent.

DICKINSON, J. Upon the petition of the Minneapolis Railway Terminal Company, in proceedings under the statute for acquiring for its purposes certain lands of the Minneapolis Union Railway Company, commissioners were appointed by the court, and they proceeded to make their award of damages. The Union Railway Company having failed to appear before the court upon the hearing of the petition, although it had been served with notice, applied by petition, supported by affidavits tending to excuse its default, to have the order appointing commissioners set aside, and that it might be heard in opposition to the condemnation proceedings. Upon considering this latter motion the court deemed that the default of the Union Railway Company was excusable, but refused the application upon other grounds to be hereafter stated. That company then appealed from the order refusing this application, and also from the order appointing commissioners. We will first consider the former of these appeals.

It appears that the appellant had acquired the land in question, with other lands, as early as April, 1883, for its corporate purposes, and that it has since constructed a union passenger railway station upon a part of such lands, but not upon the land in question. Easterly of the present site of this depot the Minneapolis & St. Louis Railway Company formerly occupied a strip of land, upon which it had two railway tracks. In 1883 an exchange was made between these companies; this appellant taking possession of the land upon which those two tracks were laid, and giving possession to the

Minneapolis & St. Louis Company of a strip of land westerly of the depot site, upon which the latter company has since maintained its two tracks. Still west of these tracks is High street. Between the depot building and High street the appellant has maintained a platform, which forms a bridge over these tracks, and serves as a means of approach to its depot building. The land in question lies between these tracks and High street, and southerly of this platform or bridge. The appellant's petition goes to show the necessity for an extension in a southerly direction of its depot building, for baggage-rooms and other purposes, and for extending correspondingly the approach to the same by bridging over these tracks from the land sought to be condemned to the depot extension. On account of this proposed use, the right of the railway terminal company to take the land is opposed. The court below was of the opinion that if the appellant had the right to so use the land, bridging over these tracks as proposed, and had shown such right and its purpose to so use it at the proper stage of the proceedings, the railway terminal company should not have been allowed to take the land in question for its purposes. But the court was further of the opinion that there was "nothing in the showing from which it can be inferred that such exchange was other than an absolute and permanent exchange of properties; nothing tending to show that the title of the Minneapolis & St. Louis Railway Company to the two tracks and land on which the same were located, given by it to the Union Railway Company on such exchange, was not as absolute as a railway company can have in land used for railroad tracks." The court further stated, in assigning reasons for its refusal, that "if there was any limitation as to the property received by the Minneapolis & St. Louis Railway Company on such exchange, in respect to time or to use, or any reservation of right to the Union Railway Company in respect to such property, it should have been shown by the last-named company, and is not shown nor asserted." *For this reason* the application was denied; that is, because the appellant had failed to show that, as against the Minneapolis & St. Louis Company, it had a right to extend a platform or bridge as proposed over the two tracks of that company. The order appealed from did not, therefore, rest upon any ground of discretion, but upon

legal grounds alone. Nor do we understand that the order rests upon a *decision* by the court of any controverted questions of fact. If the court had considered that, upon this motion, the appellant had shown *prima facie* the right claimed, and that had been denied, so that a controversy had been presented as to the facts affecting the question of the right of the appellant to make its proposed extension of the bridge, the court would not probably have determined such facts upon the hearing of this motion and upon affidavits, but (the default being excused) would have left that to be decided upon a full hearing, as a proper issue in the condemnation proceedings.

We are of the opinion that the court misconceived the case of the appellant, as shown by the verified petition, and the separate affidavit of Mr. Hill. It may be taken as an admitted fact that the interest of the Minneapolis & St. Louis Company in the land occupied by its tracks was such as it acquired, by an executed parol agreement for an exchange, from the appellant. What is the extent of that interest, or rather what that is alleged to have been by the appellant in its moving papers, is the question here. The verified petition of the appellant states "that it is the owner in fee-simple" of the land described, "and is entitled to the exclusive use and enjoyment of the same, except that the Minneapolis & St. Louis Railway Company has the right to use the space thereon for two railway tracks across said lots, * * * which right of use was given by said railway company in exchange for the use of certain other lands" referred to. In the separate affidavit accompanying the petition the affiant says that "all the arrangements and agreements for exchange of tracks between said St. Louis Company and the said Union Railway Company were made by this affiant in person, with the officers of said St. Louis Company; that the right of way agreed on was the right of way for two tracks, and no more; and further, that it was distinctly understood and agreed that said two tracks should pass between said High street and the buildings of said Union Railway Company, and that an approach should be made from said High street to said buildings by a continuous bridge over said tracks; that at the time of said agreement the length of said buildings and bridge had not been determined, and there was no understanding or agreement, expressed or

implied, between said parties in any way limiting or restricting the said Union Railway Company as to extent of the bridging over of the said two tracks." It seems to us that it is here distinctly averred that the appellant owns in fee the land occupied by these tracks, subject *only* to a right in the Minneapolis & St. Louis Company to use the same for its two railway tracks; and that such mere easement was granted with the expressly reserved right to span the tracks by a continuous bridge between High street and the buildings of the Union Company, the extent of which had not then been determined upon. As an averment of fact as to the right now urged by the appellant, we think this is sufficient, presenting a case for hearing upon the merits. It is not important as to the question here being considered that these allegations are denied by opposing affidavits.

Upon still another ground it would seem that, if the court deemed the default of the appellant excusable, so that it ought to have been allowed to maintain in the condemnation proceedings such rights as it properly asserted, the discretion of the court should have been exercised in its favor. As owner of the land proposed to be taken, the appellant would have had a right, at the proper stage of the proceedings, to have opposed the taking of this land, upon the ground or contention that the proposed appropriation was not necessary for the purposes of the petitioning company.

The court further held that, the commissioners having filed their report and award before the hearing of this application, it was not within the power of the court to grant the relief sought. We consider that the court had such authority, and that Gen. St. 1878, *c.* 66, § 125, is applicable in proceedings before the court of this nature. *Wilcox* v. *St. Paul & N. P. Ry. Co.*, 35 Minn. 439–443, (29 N. W. Rep. 148.)

The respondent claimed that the denial of a former similar application constituted a final determination of the matter here involved, barring this renewed application. The court properly overruled this objection. The former denial was expressly made "without prejudice." By the very terms of the order which is claimed to bar a renewed motion, a right to make the same was granted. The order must be given effect according to its terms and obvious purpose. *Gunn* v. *Peakes*, 36 Minn. 177, (30 N. W. Rep. 466.)

v.38m—**11**

The respondent, presenting a certified record showing that the appellant has also appealed to the district court from the report of the commissioners, urges that, for this reason, the order in question should be affirmed.   The fact that this was not a part of the case before the district court upon the hearing of this motion would be a sufficient reason why we should not regard it now.   But the respondent, moving here upon this ground to dismiss this appeal, fairly presents the question as to the consistency of the remedies sought by the appellant. We deem them to be not inconsistent; nor did the appeal from the award constitute a waiver of such objections as might be urged as to the propriety of allowing the land to be taken.   Both the action of the court in its determination as to the propriety of the proposed taking of the land, and the award of the commissioners as to damages, may involve error, or be prejudicial to the rights of the land-owner. In either case there is a right of appeal, which must be exercised within a short time, fixed by statute.   An appeal from the award would not involve any question as to the propriety of the action of the court, nor would an appeal from the order of the court involve the sufficiency of the damages awarded.   Both appeals may be necessary for the protection of the rights of parties.

It is therefore considered (giving effect to the expressed conclusion of the court in the order appealed from as to the appellant's default being excused) that the order refusing the motion should be reversed, and that, upon such terms as may be prescribed by the court below, by its proper order in that regard, (if it shall deem it proper to impose terms,) the motion should be granted so far as relates to the land here in controversy.   This determination will be carried into effect by the further order of the court below, as here indicated.

The above conclusion renders it unnecessary, as it would seem, to consider the question presented by the appeal from the order appointing commissioners; but we are of the opinion that the grounds upon which the appellant claims that order to have been invalid are not sustainable, and the validity of that order is affirmed.