THE BOARD OF WATER COMMISSIONERS OF THE CITY OF
NORWICH *vs.* CHARLES S. JOHNSON ET AL.

THE BOARD OF WATER COMMISSIONERS OF THE CITY OF
NORWICH *vs.* J. RAYMOND PALMER ET ALS.

Second Judicial District, Norwich, April Term, 1912.

PRENTICE, THAYER, RORABACK, GEORGE W. WHEELER and RALPH
WHEELER, Js.

The right to take private property for public use appertains to every
  independent government.
In the exercise of this power the legislature itself may specify the par-
  ticular property which is to be taken for the defined public purpose,
  or, under a general grant of the right to take any property which
  may be "necessary" for that purpose, it may delegate the deter-
  mination of the question of necessity to some independent board or
  tribunal or—as in the present case—to the persons or corporation
  empowered to condemn; but by whomsoever the question of neces-
  sity may be decided, its determination is a legislative or political,
  and not a judicial, function, which is reviewable by the courts only
  when the decision is attacked for unreasonableness, bad faith, or a
  disregard of the conditions prescribed by the legislature.
Under such circumstances the condemnor is not obliged to allege, in
  its application for an adjudication of the amount of compensation
  to be paid to property-owners, the existence in fact of the necessity
  for the taking, but may rest upon its own determination of that
  question until that has been challenged for sufficient cause.
A property-owner, having no legal right to be heard upon the question
  of necessity, cannot justly claim that for lack of such opportunity
  he has been deprived of his property without "due process of law."
The steps taken in the exercise of the power of eminent domain relate
  in part to legislative or political questions, and in part to matters
  of judicial cognizance; and "due process of law," as applicable to
  questions of either class, implies such an exertion of the powers of
  government as the settled maxims of law permit and sanction, and
  under such safeguards for the protection of individual rights as
  those maxims prescribe for the particular class to which the case
  in hand belongs.
The law of the land, which is but another name for "due process of law,"
  does not necessarily imply a judicial process, or proceedings after
  the established method of courts. Action of the legislature, within
  the limits of its authority and conformably to constitutional safe-
  guards and established principles, is the law of the land.

Water Commissioners v. Johnson.

In the present case the General Assembly authorized the board of water commissioners of the city of Norwich to take "any land, water, water rights or other property . . . which may be required . . . for furnishing such supply of water as the necessities or convenience of the inhabitants of said city may require"; and provided that in case of disagreement with the property-owners as to their compensation, the board should apply to a judge of the Superior Court to determine it and direct how it should be paid. Upon such an application, duly served and returned, it was *held:*—

1. That inasmuch as the legislature had not seen fit to determine what particular property should be taken, nor designated any one to make such determination, the board of water commissioners were invested with that power.

2. That its decision was, prima facie at least, valid and conclusive, and that the board might rest upon it until it was challenged by the property-owners for sufficient cause.

3. That the steps taken, having been in strict accord with accepted maxims and principles relating to political questions on the one hand, and in conformity with established judicial methods and requirements on the other, constituted due process of law.

4. That the power to take private property for public use extended to all property within the limits of the State, and therefore the grant in question was not invalidated or impaired merely because the territory within which the property might be condemned was not restricted.

5. That the right to condemn, although conferred in general terms, would not be construed to apply to property which had already been appropriated to a public use.

6. That the enactment of a general statute authorizing cities, towns and boroughs to condemn land, springs, streams and ponds, for public and domestic use (General Statutes, § 2600, as amended by Public Acts of 1902, chapter 192, § 2), did not repeal by implication the provisions in the plaintiff's charter authorizing the condemnation in question, since the two provisions were in no way inconsistent with each other, and the latter, being an Act of a local and private nature, was not affected by the general repeal (§ 4931) resulting from the adoption of the Revision of 1902.

Argued April 30th—decided October 10th, 1912.

APPLICATIONS for the determination of the amount of compensation to be paid certain owners of land, water, and water rights, by reason of the proposed diversion and appropriation, by the plaintiff, of the waters of Stony Brook in the town of Montville, pursuant to

and as defined in an adopted plan and survey on file, brought to the *Hon. Milton A. Shumway*, a judge of the Superior Court, and heard and determined by him after a motion to quash had been denied and a demurrer to the applications, filed by certain of the defendants, had been overruled, and appeal by those defendants. *No error in either case.*

February 6th, 1911, the board of water commissioners of the city of Norwich, for the purpose of furnishing that city with a sufficient and permanent supply of water, voted to adopt a plan and survey on file, which appropriated, to be conveyed to the city as a supplement to its existing system, the waters of Stony Brook in the town of Montville, in the manner and to the extent shown, and to proceed as speedily as possible to acquire by purchase or condemnation the land, water, water rights and other property or franchises necessary to carry out the project and execute the work as outlined. March 6th this action of the board was formally approved by the court of common council. Efforts to obtain by purchase what was required, as well as to agree upon the amount of compensation to be paid therefor, having failed, the board on August 25th, 1911, voted to condemn, appropriate and take, for the execution of said project, all the water and water rights of said brook which should be "affected, detained, diverted, taken and used by means of the location, construction and maintenance" of the dams, reservoir, pipes and other works as shown on the plan and survey. This vote was approved by the court of common council on September 4th.

The defendants are the owners of land, interests therein, or water privileges on the brook below the location of the proposed dam, and the injury to them is such, and such only, as would result from a detention, diversion or appropriation of the waters of the stream

by the projected action of the plaintiff, and the consequent interference with its natural flow.

The applications ask for a determination of the amount of compensation which the defendants respectively should receive for any property or property rights of theirs taken, or injuries or damage suffered by reason of the proposed work, and for nothing else, and the judgment makes such determination, and undertakes to adjudicate no other matter. The applications set out the facts stated above. They also allege, and the judge finds, that the plaintiff has endeavored to, and is unable to agree with the appellant defendants upon the amount of compensation to be paid to them. It is not alleged that there has ever been a judicial determination of the matter of necessity for the taking, and it does not appear that such a determination has ever been had.

*William A. King* and *Charles W. Comstock,* for the appellants (certain defendants).

*Joseph T. Fanning* and *Donald G. Perkins,* for the appellee (plaintiff).

PRENTICE, J. The defendants present in their reasons of appeal, in various forms, a fundamental objection to the proceedings had before the judge to whom this application was addressed, and to the rendition of his judgment, which in substance is that the plaintiff upon the facts, either alleged or shown, is not entitled to take what it is sought to appropriate, since there has never been a judicial determination that there exists a necessity for such appropriation for the purpose to which it is proposed to devote it. In this connection they assert that to permit the plaintiff to take as attempted, in the absence of such a determination, would

be to deprive them of their property without due course of law, in contravention of constitutional prohibition.

A consideration of this objection involves the double inquiry, first, whether the plaintiff in the course pursued by it, and in this application, has acted within and in conformity with, or in excess of, the rights and powers attempted to be conferred upon it by the General Assembly; and second, whether the rights and powers so attempted to be conferred are such as may be given without invading constitutional guaranties.

In 1866 the city of Norwich was by a charter amendment authorized "to take and convey from the Yantic River, or any other river, stream, pond, or lake, such supply of water as the necessities or convenience of the inhabitants may require; *provided,* that the water aforesaid be taken with the assent previously obtained of those who have right thereto." Authority was given to enter upon private lands to make surveys, and to agree with owners upon the compensation to be made. 6 Special Laws, p. 100. Here it will be noted that no limitation is placed upon the location of the river, stream, pond, or lake, and that the right of eminent domain is not conferred. By the provisions of a revised and amended charter passed in 1871, a board of water commissioners was charged with the duty, under the direction of the court of common council, of maintaining the city water-works and the property held therefor, and the power of acquisition which was vested in the city by the charter provision of 1866 above recited was in unchanged language cast upon that board as an agency of the city. 7 Special Laws, p. 198. In 1893 the charter was again amended, so that the board of water commissioners was empowered to "take any land, water, water rights or other property, or any franchise which may be required for executing the powers conferred upon them by the charter of said city of Norwich,

or for furnishing such supply of water as the necessities or convenience of the inhabitants of said city may require." It was further provided that the board might, subject to the approval of the court of common council, agree with the owners of property taken as to the compensation to be paid, and in case of disagreement might apply to any judge of the Superior Court to determine such compensation and direct the manner of payment, and after such determination and payment might take possession of and appropriate the property. All inconsistent Acts and parts of Acts were repealed. 11 Special Laws, p. 274.

This last legislation beyond question conferred upon the board, acting with the approval of the court of common council, the power of eminent domain, and by the force of the express as well as an implied repeal removed from its authority the limitation upon it resulting from the pre-existing provision by which its power of acquisition was restricted to that which could be obtained with the assent of the owner. Henceforward it could take *in invitum* the property rights enumerated in the Act, to be utilized for the public use stated therein, provided, of course, that the conditions prescribed and involved in a rightful exercise of such power were present.

The authority thus given was, beyond question, one not confined to the territorial limits of the city of Norwich. It is impossible to read the original Act of 1866 without coming to the conviction that the city was empowered to locate its source of supply without its boundaries. The general and unrestricted language of the grant itself sufficiently indicates that, and the provision, found in another section, for the conveyance of the water into the city emphasizes it. The revision of the charter in 1871 contains the same indications and others: as where authority is given to supply water

to persons residing along the line of the works outside of the city. It is apparent that it was the intent of the Act of 1893 to remove the restriction that all property must be secured by agreement with the owners, and confer the power of acquisition *in invitum*, and that there was no intent to restrict the plaintiff as to territory, or to change its existing rights in that regard. Had there been such intention, there would certainly have been used appropriate language, and not a substantial repetition of the former general and unrestricted language.

Among the conditions which were prerequisites to the exercise by the board of the power thus conferred upon it, was the existence of a necessity, within the meaning which the law attaches to that word when used in this connection, for the proposed taking, and a determination of its existence. This determination was, primarily at least, a matter for the legislative department of the government. *Todd* v. *Austin*, 34 Conn. 78, 88; *New York, N. H. & H. R. Co.* v. *Long*, 69 Conn. 424, 435, 37 Atl. 1070; *Waterbury* v. *Platt Bros. & Co.*, 76 Conn. 435, 440, 56 Atl. 856; *Appleton* v. *Newton*, 178 Mass. 276, 281, 59 N. E. 648. In the present case the legislature determined the question only to the extent of deciding that there was a necessity which justified the grant of power made. It did not, as it occasionally does, go further, and designate any particular source from which the city's water-supply might be drawn, or the defendants' properties and rights as being subject to appropriation, and thus, either directly or indirectly, pass upon the question of a taking of the waters of Stony Brook, or of an appropriation of the defendants' particular properties for the reinforcement of the city's supply. There was thus no attempt to pass upon the question of necessity to its full extent, and as applicable to the defendants' properties. But the power to deter-

mine this all-important question is one which all authorities agree may be delegated. It may be delegated to some person, tribunal, or board, or to the party to whom the authority to condemn is given. *New York, N. H. & H. R. Co.* v. *Long,* 69 Conn. 424, 435, 37 Atl. 1070; *People ex rel. Herrick* v. *Smith,* 21 N. Y. 595, 598; *Eastern R. Co.* v. *Boston & M. R. Co.,* 111 Mass. 125, 131; *Central R. Co.* v. *Pennsylvania R. Co.,* 31 N. J. Eq. 475, 489.

Where, as here, the legislature itself has not determined the question of necessity, but has authorized some public or private corporation, or individuals, to condemn such property as may be necessary for a defined public purpose, without designating who shall decide what particular property may be so necessary, the right of decision is vested, primarily at least, in the party to whom is given the power to condemn. Upon this proposition the courts are in general agreement. *Mississippi & R. R. Boom Co.* v. *Patterson,* 98 U. S. 403, 404; *Lynch* v. *Forbes,* 161 Mass. 302, 304, 37 N. E. 437; *Moseley* v. *York Shore Water Co.,* 94 Me. 83, 89, 46 Atl. 809; *Cotton* v. *Mississippi & R. R. Boom Co.,* 22 Minn. 372, 374; *Biddle* v. *Wayne Water Works Co.,* 190 Pa. St. 94, 96, 98, 42 Atl. 380.

There is by no means the same agreement as to the effect which will be given to a decision so made. In some jurisdictions it appears to be broadly held that as the question involved is a purely political one, it may not become a matter of judicial cognizance, even by way of review, if the conditions attached to the delegation have been complied with. *Mississippi & R. R. Boom Co.* v. *Patterson,* 98 U. S. 403, 406; *Shoemaker* v. *United States,* 147 U. S. 282, 298, 13 Sup. Ct. Rep. 361; *Lynch* v. *Forbes,* 161 Mass. 302, 308, 37 N. E. 437; *Hayford* v. *Bangor,* 102 Me. 340, 344, 66 Atl. 731. This court has held that ordinarily the courts may not

interfere; *New York, N. H. & H. R. Co.* v. *Long,* 69 Conn. 424, 436, 37 Atl. 1070; *Waterbury* v. *Platt Bros. & Co.,* 76 Conn. 435, 440, 56 Atl. 856; but in *Todd* v. *Austin,* 34 Conn. 78, 88, we recognized that situations where there was bad faith or unreasonable conduct in the exercise of the political function furnished a justification for judicial interference. Many cases in other States have expressed this latter view, and held what we regard the better law, that the decision of the condemnor that a necessity exists for the taking of particular property is one open to judicial review to discover if it was unreasonable, or in bad faith, or an abuse of the power conferred, and that the appropriation of the property will be restrained if it be found that such was the character of the decision. *In re St. Paul & N. P. Ry. Co.,* 34 Minn. 227, 230, 25 N. W. 345; *Bennett* v. *Marion,* 106 Iowa, 628, 632, 76 N. W. 844; *Olmsted* v. *Morris Aqueduct,* 46 N. J. L. 495, 500; *Smith* v. *Chicago & W. I. R. Co.,* 105 Ill. 511, 519; *Savannah Ry. Co.* v. *Postal Tel. Co.,* 115 Ga. 554, 560, 42 S. E. 1.

This difference of view, however, whether or not it is as real as it is apparent, is not important as related to our present inquiry, since there is substantial accord between the cases of the different classes to the extent at least of holding that the question of necessity is one which under the conditions named is to be determined primarily by the party empowered to condemn, and that the determination made by it will be conclusive unless and until it is successfully attacked for unreasonableness, bad faith, or abuse of power. The following cases, all of which recognize the right of judicial review, sufficiently illustrate the correctness of this proposition. *Pennsylvania R. Co.'s Appeal,* 128 Pa. St. 509, 521, 18 Atl. 522; *Giesy* v. *Cincinnati, W. & Z. R. Co.,* 4 Ohio St. 308, 326; *Riley* v. *Charleston Union Station Co.,* 71 S. Car. 457, 469, 51 S. E. 485; *In re Minne-*

*apolis Ry. Terminal Co.*, 38 Minn. 157, 161, 36 N. W. 105.

It follows, of course, from the prima facie conclusiveness at least of the decision made pursuant to the delegation of authority, that the condemnor in such case may rest upon it until the attack upon it is made; that he is under no duty to have judicially established, or to allege in his application for assessment of the amount of compensation, and prove, the existence in fact of the necessity; and that the burden of any attack upon it rests upon the attacking party. Otherwise we should have the strange result that a condemnor, who, in the exercise of authority rightfully delegated to him, had determined that the necessity existed, would be required to ignore the validity of his own action thus taken, and present to a court, by allegation and proof, for its decision, the very question he had already passed upon. Thus would he convert himself into a mere initiator of judicial proceedings, and transfer to the courts the decision of the political question whose determination the legislature, acting within its proper sphere, had adequately and lawfully provided for otherwise.

The cases which have arrived at this anomalous result are few indeed. *Stearns* v. *Barre*, 73 Vt. 281, 50 Atl. 1086, is one of them, and the principal one. *Tracy* v. *Elizabethtown, L. & B. S. R. Co.*, 80 Ky. 259, although less pronounced in its views, appears to be another. We have no occasion to notice the reasoning or conclusion of these cases further than to observe that they are directly opposed to a long line of cases to the contrary, and that they are not, in our opinion, founded in sound reason. The fundamental difficulty with them is that they overlook the facts, or the real significance of them, that the question of necessity is a political and not a judicial one, that its determination as a political question properly belongs to the legislative depart-

ment of the government, and that its determination under a delegation of authority is the determination of the legislative department. It is one thing to say that the courts may review the action of the delegated body to secure the preservation of constitutional or legal rights, when the legality or regularity of that action is challenged for sufficient cause, and quite another for the courts to assume to themselves original authority to act in the premises, as is in effect done when the condemnor is required to establish judicially the very thing which it was empowered to determine. The courts may not by indirection, through the operation of such simple processes, usurp administrative jurisdiction.

It thus appears that we have before us a situation in which the plaintiff shows adequate authority from the General Assembly to exercise the power of eminent domain in taking, for a confessedly public use, property and property rights determined by it to be necessary for that use; in which the plaintiff, with the required consent of the court of common council, had determined that the appropriation of the defendants' several properties and property rights described in the application was necessary for such use, and had voted to appropriate them therefor; in which the plaintiff, failing to agree with the owners as to the amount of compensation to be paid, had, by the presentation of its application, taken the steps prescribed in the enabling Act to have the amount of such compensation judicially fixed; in which the proceedings upon that application, including full notice to the defendant owners, were had in due and regular order; and in which a judicial judgment fixing the amount of such compensation was had upon such proceedings. Such being the case, the defendants cannot complain that their property is about to be taken without due course or process of law.

"Due process of law" is but another name for "law

of the land." *Dartmouth College* v. *Woodward*, 4 Wheat. (17 U. S.) 518. It does not necessarily imply a judicial process, or proceedings after the established method of courts. On the contrary, legislative action within the limits of legislative authority and conformably to constitutional safeguards and established principles is the law of the land. *Davidson* v. *New Orleans*, 96 U. S. 97, 104; *McMillen* v. *Anderson*, 95 U. S. 37, 41; *Pittsburgh, C., C. & St. L. Ry. Co.* v. *Backus*, 133 Ind. 625, 642, 33 N. E. 421. The law of the land in judicial proceedings is one thing: as regulating legislative proceedings it is quite another. "Due process of law in each particular case means such an exertion of the powers of government as the settled maxims of law permit and sanction, and under such safeguards for the protection of individual rights as those maxims prescribe for the class of cases to which the one in question belongs." Cooley on Constitutional Limitations (4th Ed.) s. p. 356; *People ex rel. Herrick* v. *Smith*, 21 N. Y. 595, 598; *People* v. *Adirondack Ry. Co.*, 160 N. Y. 225, 238, 54 N. E. 689.

The steps taken in the matter, in so far as they related to political questions and concerns, having been in strict accord with accepted maxims and principles governing such action, and, in so far as they related to matters of judicial cognizance, in conformity with established judicial methods and requirements, there has been due process of law.

But the defendants urge that they have never had the opportunity to be heard upon the question of necessity, and that for that reason there has not been due process of law. They were not entitled to such opportunity. It is well settled that, as related to the exercise of the power of eminent domain, all questions which are political in their nature and lie within the legislative province may be determined without notice to the

owner of the property affected; and the question of whether a particular work or improvement shall be made, or particular property taken, being one of that character, the owner is not entitled to a hearing upon it as a matter of right. 2 Lewis on Eminent Domain (3d Ed.) § 567; Cooley on Constitutional Limitations (4th Ed.) s. p. 538; *Zimmerman* v. *Canfield,* 42 Ohio St. 463, 471; *Appleton* v. *Newton,* 178 Mass. 276, 281, 59 N. E. 648; *People* v. *Adirondack Ry. Co.,* 160 N. Y. 225, 236, 54 N. E. 689; *State Water Supply Com.* v. *Curtis,* 192 N. Y. 319, 330, 85 N. E. 148.

The brief of defendants' counsel calls attention to two features of the charter provision, with the evident purpose of suggesting that they render it inoperative, if it is to be construed as we are compelled, by force of its general and unrestrained language, to construe it. The one is that there is no restriction as to the territory within which the power of appropriation may be exercised, and the other that the language is broad enough to embrace property which has already been taken for a public use. These suggestions are not pursued at length, and we are not told why, for these reasons, the legislative enactment must be held a nullity in its entirety, or at least as to territory lying outside of the city of Norwich, except for the proposition, with citation of authority, that property once taken cannot be taken again to be used for the same purpose and in the same manner.

A sufficient answer to the second of the suggestions, and, incidentally, to the proposition last referred to, is found in the fact that the assumption upon which it is based is not well made. In *Evergreen Cemetery Asso.* v. *New Haven,* 43 Conn. 234, 242, we held that although the language conferring the right of condemnation was general and unrestricted as defining the property which might be taken, it would be presumed, in the absence

of express words or some necessary implication to the contrary, that it was not intended that land already appropriated to one public use should be taken for the new use. In this connection it will be further noted that this objection might be made as effectively to the Act were the power therein conferred expressly limited in its operation to Norwich, and that if it furnished ground for a declaration of invalidity of this Act much, if not most, of our legislation empowering municipalities to provide water-supplies would fail.

The first of the suggestions is without valid foundation by reason of either constitutional provision or legal principle. The right to take private property for public use is one which is inherent in the State as an independent sovereign. It attaches to every man's land, and is paramount to his right of ownership. All titles are held subject to it. The Constitution is not its source, but the source of its limitations. *Todd* v. *Austin,* 34 Conn. 78, 88; *Clark* v. *Saybrook,* 21 Conn. 313, 324. It knows no territorial divisions, and is fettered by no limitations of distance. Whenever the public need calls for the public appropriation of any property subject to the jurisdiction of the sovereignty, it may be taken to supply that need, wherever it may be located. There is no constitutional or other legal restraint upon this sovereign right to reach out to take what the public need demands, however far the need requires that reach to extend.

Under our form of government the sovereign people act, in determining the existence and extent of the public need, through the legislative department, which, as we have seen, may act directly or through the medium of delegated power. Whether or not there shall be such delegation, and the scope of it, is a matter for legislative decision. When a delegation is made it becomes a part of the machinery adopted to arrive

at the political result.   The feature of the delegation in the present case with which we are dealing is that which left the determination of the necessity unhampered by territorial limitations.   We are bound to presume that the legislature had what it conceived to be sufficient reasons for the course pursued.   What authority exists for our review of this administrative decision we fail to discover, as we also do as to what constitutional or other legal objection there is why the legislature might not, if it saw cause, leave the agent as free in the matter of territory as it would have been itself, had it chosen to act.   What, after all, concerns the courts, is not the method pursued or machinery employed by the legislature within its sphere of action— assuming, of course, that it is regular and not violative of constitutional provisions—but the resultant determination of the political question before it.   When that determination is made, then the opportunity has arrived when the rights of property may be judicially protected from unlawful invasion.

The motions to dismiss and demurrers presented the claim that the charter provision of 1893 was impliedly repealed by § 2600 of the General Statutes as amended by § 2 of chapter 192 of the Public Acts of 1903.*   Ref-

---

* Section 2600 of the General Statutes, as amended by § 2 of chapter 192 of the Public Acts of 1903, is as follows: "Any city, town, borough, or corporation authorized by law to supply the inhabitants of any city, town, or borough with pure water for public or domestic use. may take and use such lands, springs, streams, or ponds, or such rights or interests therein, as the Superior Court, or any judge thereof in vacation, may, on application, deem necessary for the purposes of such supply.   For the purpose of preserving the purity of such water and preventing any contamination thereof, such city, town, borough, or corporation may take such lands or rights as the Superior Court, or any judge thereof in vacation, may, on application, deem necessary therefor. Compensation shall be made to all persons entitled thereto in the manner provided by section 2601.

Water Commissioners *v.* Johnson.

erence is made to this subject in the brief of defendants' counsel, but we do not understand them to urge that proposition before us. It is untenable by reason of § 4931 * of the General Statutes, and the further fact that the two provisions are in no way inconsistent with each other and may well stand together. The general statute is an enabling Act containing a general grant of power, and its provisions are neither mandatory nor exclusive. *Fair Haven & W. R. Co.* v. *New Haven,* 75 Conn. 442, 447, 53 Atl. 960.

The motions and demurrers also contended that the proceedings must fail for the reason that the description of the property and rights taken was insufficient. This claim is not pursued in the briefs.

The foregoing opinion considers and determines all the questions which are raised in the companion case of the Board of Water Commissioners of the City of Norwich *vs.* J. Raymond Palmer *et als.,* which was argued with this cause.

There is no error in either case.

In this opinion THAYER and RORABACK, Js., concurred.

GEORGE W. WHEELER, J. (dissenting). The General Assembly, in the amendment to the charter of Norwich, empowered the board of water commissioners, with the approval of the common council, "to take any land, water, water rights or other property, or any franchise which may be required . . . for furnishing such supply of water as the necessities or convenience of the inhabitants of said city may require."

---

*General Statutes, § 4931, reads as follows: "All public laws not contained in the foregoing titles except such as by particular provision and this title are continued in force, are repealed; but acts of incorporation, all confirming and validating acts, all acts which though public in form, are of a local or private nature, whether printed with the public or with the special acts, shall not be affected by said repeal."

The question at issue is whether under this grant the board, without notice to the owners, may by its mere vote to condemn land and water rights in an adjoining town, determine the taking and the necessity for the taking for such use, so that it need not allege it in its application to condemn, nor offer proof of it on the hearing.

If the legislature can delegate the power of determining the necessity for the taking under such general grant to a municipal corporation, it can make a similar delegation to a private corporation. For example, it could delegate to a railroad power to take any lands or franchises required for its purposes, and that too, without a designation of the route, or the location, general or special, of the property to be taken. By vote of its directors the railroad could decide, under its general grant, to take any man's property without notice to him or an opportunity to be heard as to the necessity for and reasonableness of the taking, and upon its application to the court might condemn without allegation or proof that the property taken was necessary to its use. The argument and conclusions of the majority opinion lead to this, and we think there must be something fundamentally wrong with such a doctrine. *Keyport Steamboat Co.* v. *Farmers Trans. Co.*, 18 N. J. Eq. 13, 20.

By its grant of power to condemn, the legislature ordinarily declares the taking for the purposes of the grant a public use, and declares the existence of a public necessity for the condemnation of the property covered by the grant to that use. *New York, N. H. & H. R. Co.* v. *Long*, 69 Conn. 424, 435, 37 Atl. 1070. This declaration follows a grant which specifies the source, location, property or rights to be taken. It does not follow a general grant which fails to make such specification. The power of the legislature to condemn may

ordinarily be delegated.  In the case before us the grant is general in terms, and neither the property to be taken nor the necessity for the taking has been determined by the legislature.  It has conferred on the authorities of Norwich power to take anywhere in the State, and restricted the taking to such property "as the necessities or convenience of the inhabitants of said city may require."

The ownership of all property is held subject to its appropriation by legislative grant to the public use. Such exercise of power is political in character, and with no limitation upon the legislative authority to take, and the extent, necessity and propriety of its taking other than that: 1. The use must be a public one.  2. The taking must be in good faith and not in an abuse of power.  3. The taking must not be unreasonable. *Waterbury* v. *Platt Bros. & Co.*, 76 Conn. 435, 440, 56 Atl. 856.  Ordinarily the legislative determination to take is final.  Courts will not interfere with its exercise of discretion except in clearest case of violation of some of the foregoing principles.  When the property to be taken, or its location or source, is designated within reasonable bounds, the legislative designation is final. When the authorities say that the legislative designation is final, they speak with reference to designations of this description, and not to those unlimited by description or location of any character.

In a valid grant limiting source, location, or property to be taken, the law presumes notice, and under our law and legislative practice the fact accords with the presumption.  In a general grant to take anywhere in the State there is no such presumption.  For it cannot be said, in reason, that all the property and franchises in the State will serve the public use of supplying Norwich with water, since not all is required for that purpose.  A general grant of this character which attempts

to confer the power to take, *in invitum*, any and all property in the State for a public purpose, without notice to the owners and a determination of the reasonableness of the taking by some one other than the parties in interest, cannot be supported. The reasonableness of the taking and the necessity are governed by the same principles and their discussion need not be divided. Eminent domain rests on the necessity of devoting the property condemned to the proposed public use; the taking must therefore be limited to the necessities of the case. Cooley on Constitutional Limitations (7th Ed.) p. 779; *Kohl* v. *United States*, 91 U. S. 367, 372; note to *Henderson* v. *Lexington* (Ky.), 22 L. R. A. (N. S.) 20, 55. When the legislature delegates this power to a public or private corporation, there is implied in the grant that it shall be exercised when, and to the extent, found to be necessary. *Webster* v. *Susquehanna Pole Line Co.*, 112 Md. 416, 76 Atl. 254; *Stearns* v. *Barre*, 73 Vt. 281. In the case before us, the delegation is not dependent upon the necessity implied in the grant; the express terms of the grant limit its exercise to such property only "as the necessities or convenience of the inhabitants may require." The legislature neither decides the necessity nor expressly delegates to any one the power to decide. That decision must involve the decision to take the property of the respondents and a determination that such taking is necessary; and this is a judicial question. Lewis on Eminent Domain (Vol. 2, 3d Ed.) § 599, says: "In all such cases the necessity or public utility of the proposed work or improvement is a judicial question. . . . In all such cases, where the authority is to take property necessary for the purpose, the necessity of taking particular property for a particular purpose is a judicial one, upon which the owner is entitled to be heard." Id. § 602; Sutherland on Statutory Construction (Ed. 1891) § 387; Ran-

dolph on Eminent Domain, § 53; *Riley* v. *Charleston Union Station Co.*, 71 S. Car. 457, 489, 51 S. E. 485; *In re St. Paul & N. P. Ry. Co.*, 34 Minn. 227, 230, 25 N. W. 345; *Olmsted* v. *Morris Aqueduct*, 46 N. J. L. 495, 500; *Tracy* v. *Elizabethtown, L. & B. S. R. Co.*, 80 Ky. 259; *Henderson* v. *Lexington*, 132 Ky. 390, 403, 111 S. W. 318.

There are two classes of authorities upon this subject; one holds that the question is a judicial one; the other, headed by *Lynch* v. *Forbes*, 161 Mass. 302, 37 N. E. 437, holds that the decision of the question of necessity is for the legislature or its delegated agent. And these authorities hold that in the absence of bad faith or abuse of power the declaration of the legislature or of its delegated agent is conclusive. *Boston* v. *Talbot*, 206 Mass. 82, 90, 91 N. E. 1014.

The opinion of our brethren asserts that "the right of decision is vested, primarily at least, in the party to whom is given the power to condemn. Upon this proposition the courts are in general agreement"; and cites in support, *Lynch* v. *Forbes*, 161 Mass. 302, 37 N. E. 437. That case does not, and the cases which follow its lead do not, hold that the decision of the question of necessity is primarily for the legislature, but do hold that it is absolutely for the legislature or its delegated agent. Judge Freeman, in a much quoted note in 42 Amer. St. Rep. 408, says of this case and its doctrine: "It is affirmed by an almost overwhelming preponderance of the authorities that the rule apparently asserted in the principal case [*Lynch* v. *Forbes*] cannot be sustained, and that, when the legislature has only authorized the taking of such property as is necessary, the question of the necessity for taking is a judicial one which must be determined either by a court, jury, or some quasi-judicial tribunal designated in the statute." Judge Freeman is, we think, right in his analysis of the

authorities. The taking of private property for any use which is not required by the necessities or convenience of the inhabitants of Norwich, is an unreasonable exercise of the right of eminent domain, and beyond the power of the legislature to delegate. *Bennett* v. *Marion*, 106 Iowa, 628, 633, 76 N. W. 844; *In re St. Paul & N. P. Ry. Co.*, 34 Minn. 227, 230, 25 N. W. 345; *Tracy* v. *Elizabethtown, L. & B. S. R. Co.*, 80 Ky. 259; *Wilson* v. *Pittsburg & L. E. R. Co.*, 222 Pa. St. 541, 545, 72 Atl. 235; *Biddle* v. *Wayne Water Works Co.*, 190 Pa. St. 94, 42 Atl. 380; *Greasy Creek Mineral Co.* v. *Ely Jellico Coal Co.*, 132 Ky. 690, 697, 116 S. W. 1189; *Smith* v. *Chicago & W. I. R. Co.*, 105 Ill. 511; note to *Chicago & N. W. Ry. Co.* v. *Morehouse*, 88 Amer. St. Rep. 918, 933, 945; *Olmsted* v. *Morris Aqueduct*, 46 N. J. L. 495, 500. If the agent is granted power to condemn property necessary to a public use, it seems illogical to hold, as our brethren do, that the agent may act in an illegal way and its action be good until attacked. It seems illogical to hold that it need not allege, in its application to condemn, the fact of necessity, upon which fact the validity of the condemnation admittedly rests, and to accord the condemnor the right to do that which is beyond the legislative grant.

A legislative determination of necessity presupposes notice to adverse parties; the petitioner in this case exercises its delegated power without notice and without an opportunity to be heard upon the necessity of the condemnation. The judgment is rendered without having had the necessity adjudicated, although the grant is predicated upon its finding. Had the General Assembly committed to the Superior Court the determination of the necessity, notice to the parties in interest would have been a prerequisite to any legal action. "It is a principle of natural justice of universal obligation, that before the right of an individual can

be bound by judicial sentence, he shall have notice, either actual or constructive, of the proceedings against him." *Dorrance* v. *Raynsford,* 67 Conn. 1, 8, 34 Atl. 706.

Granted the majority opinion be sound, this conclusion follows: if the delegation be to a court, it must, on notice given, duly hear and decide the question of necessity, but if the same delegation be to a public or private corporation, no notice need be given nor hearing had, and no adjudication of the necessity made, save by the condemnor. Under General Statutes, § 7, every petition to the General Assembly of an adversary nature must be accompanied by a citation to the adverse party, otherwise it will not be heard. If, occasionally, petitions have been heard without such notice, it has been, we believe, in cases of actual notice, or these have been so infrequent as to prove the rule.

The policy of our law, as disclosed by our statutes, has been to require notice in a proceeding of an adversary nature, whether before a court or an administrative board. Adherence to this established policy seems doubly required in an adversary action to condemn private property for a public use without having the necessity of the use determined other than by the interested party. Under the rule invoked in the opinion of the court, the judgment of officials of the interested taker decides the question of necessity, without notice to the owners of the property condemned, without a hearing upon, or proof of, the reasonableness of the taking. To confer on either a public or private corporation power to take private property at its will would invite consequences dangerous to all private ownership. "If land taken professedly for a public purpose is vested absolutely in a private agent, what is not needed for the purpose becomes his; to authorize him to take whatever he may say the purpose needs, is to subject the right of property to his good pleasure,

and finally to rest the eminent domain upon private interest instead of public good." *South Carolina R. Co.* v. *Blake,* 9 Rich. Law (S. Car.) 228, 238. "If the courts could not limit the legislature to such land as is reasonably necessary or subservient to the public use, a public use of the most insignificant proportions would support an appropriation of land practically unlimited in extent. It is obvious that to the extent that eminent domain is employed over and above that reasonably necessary for the public use, it is employed for a purpose not public but private." Note to *Chicago & N. W. Ry. Co.* v. *Morehouse,* 88 Amer. St. Rep. 918, 933, 942.

The Massachusetts doctrine, that the question of necessity is political and at the will of the legislature or its agent, is at least consistent. It fails to note that the use cannot go beyond the reasonable limits of the necessity.

The majority opinion holds that the question is political, and hence to be determined, in the first instance, by the legislature or its delegated agent, but that if the necessity be unreasonably exercised, the property-owner may so plead and must assume the burden of proving it. This position at the same time accepts and rejects the theory that the question is political and the legislative determination final. This position leads to this: taking more than is reasonably necessary is without the grant and illegal, but unless the property-owner assumes the burden and sustains by proof the unreasonableness of the taking, the condemnor acquires a legal title to land illegally taken by legal methods.

The conclusion of the opinion on this point is at variance with accepted principles, opposed to the uniform procedure in related actions, against the clear policy of our law, and practically unsupported by authority. Indeed, the overwhelming weight of authority sup-

ports the position that the necessity must be made to appear by affirmative allegation of the petitioner. In *New Central Coal Co.* v. *George's Creek C. & I. Co.*, 37 Md. 537, 564, the court say: "To justify the exercise of this extreme power, where the legislature has left it to depend upon the necessity that may be found to exist, in order to accomplish the purposes of the incorporation, as in this case, the party claiming the right to the exercise of the power should be required to show at least a reasonable degree of necessity for its exercise. Any rule less strict than this, with the large and almost indiscriminate delegation of the right to corporations, would likely lead to oppression, and the sacrifice of private right to corporate power." In *Dewey* v. *Chicago & M. E. Ry. Co.*, 184 Ill. 426, 433, 56 N. E. 804, it is said: Its (the condemnor's) right "is not a general power of condemnation, but is limited to cases where a necessity for resort to private property is shown to exist. Such necessity must appear upon the face of the petition to condemn." Lewis on Eminent Domain (Vol. 2, 3d Ed.) § 602, says: "If the necessity is denied, the burden is on the company to establish it." Cases cited in note 91; *Highland B. G. M. Co.* v. *Strickley*, 116 Fed. Rep. 852, 856; *Kinney* v. *Citizens Water & L. Co.*, 173 Ind. 252, 257, 90 N. E. 129; *Louisiana Ry. & Nav. Co.* v. *Xavier Realty*, 115 La. 328, 340, 39 So. 1; *Farnsworth* v. *Goodhue*, 48 Vt. 209, 210; *Stearns* v. *Barre*, 73 Vt. 281, 295, 50 Atl. 1086; 15 Cyc. 632. Works on pleading and practice give this as the rule, and form books specify such allegations, as do numbers of applications in reported cases which have come under our eye. Reference may be had to 7 Ency. of Pl. & Pr. p. 473, § 3, p. 525, § 8, p. 528, § 9; 7 Ency. of Forms, p. 565, Form No. 8330; 15 Cyc. 853, note 79.

We are not impressed by the argument of the majority, that unless its conclusion be accepted the con-

demnor with delegated authority, having determined the necessity existed, would be required to present proof of the question it had already decided. We think this argument assumes that the condemnor had the right to decide to take more than was reasonably necessary, which right, we understand, the opinion elsewhere, and properly, denies. Nor are we impressed by the insistence upon this course because the question involved is political and for the legislature or its delegated agent. A legal taking of property reasonably necessary for a public use is within the legislative power. An illegal taking of property not reasonably necessary for a public use is not within its power. We think the majority have misconceived the true meaning of some of the courts which hold this question a political one and primarily for the legislature. Such holding does not mean that the petitioner need not allege the necessity and prove the reasonableness of the use; at most, all that was meant was that the legislative or delegated determination might be taken as prima facie proof of the fact of necessity. The defendant thus has notice of this issue for it is a part of the application, and the burden never changes, resting at the beginning and the end upon the petitioner. Our method of proof in insurance cases affords a parallel example. *Vincent* v. *Mutual Reserve Fund Life Asso.*, 77 Conn. 281, 58 Atl. 963.

There is no allegation in the application that the board voted that this taking was necessary for a public use. The court must imply it in order to find it, and this is contrary to the general rule of construction in eminent domain proceedings. And if this might be inferred, there is no allegation that the taking was in fact necessary for the public use. The motion to dismiss on these grounds was well taken.

The statute of 1893, under which the petitioner claims the right to determine the question of necessity, was

amended and modified by General Statutes, § 2600, first enacted in 1895, and re-enacted in 1901. That statute provides: "Any city, town, borough, or corporation authorized by law to supply the inhabitants of any city, town, or borough with pure water for public or domestic use may take and use such lands, springs, streams, or ponds, or such rights or interests therein, as the Superior Court may on application deem necessary for the purposes of such supply."

If the determination of the question of necessity was committed to the board of water commissioners of Norwich by the amendment to the charter in 1893, this Act of 1895 was entirely inconsistent with it and, thereafter, made the exercise of the right to take property for a water-supply dependent upon a finding by the Superior Court that the taking was necessary. This follows from the undoubted rule that subsequent legislation repeals previous inconsistent legislation whether it expressly declares such repeal or not. 1 Sutherland on Statutory Construction (2d Ed.) § 247.

The Act of 1866 (6 Special Laws, p. 100) authorized Norwich to take its supply of water from the Yantic River, or any other stream, pond, or lake, as the necessities or convenience of the inhabitants might require, with the assent previously obtained of those who had the right thereto. Section 22 of this Act provided: "This Act shall be to all intents and purposes a public act, and may be altered, amended or repealed by the General Assembly." In the amended charter (Public Acts of 1871, p. 557, Chap. 46) the power of Norwich to take its supply of water was in identical terms conferred upon a board of water commissioners, under the direction of the court of common council; and § 98 provided: "This act shall be a public act, and may be altered, amended, or repealed at the pleasure of the General Assembly." In 1893 (11 Special Laws, p. 274)

the charter was amended, empowering said board to "take any land, water, water rights or other property, or any franchise . . . for furnishing such supply of water as the necessities or convenience of the inhabitants of said city may require." For the first time the power to take *in invitum* was given. Section 4 of this amendment provided that "this act shall be a public act." In form of enactment these several Acts are public Acts; and in their purpose they are public. And further, the amendment of 1871 was enacted as a public Act and printed among the Public Acts. Thus the legislature in express terms declared these several Acts were public Acts.

General Statutes, § 2600, was first enacted in 1895. Public Acts of 1895, p. 556, Chap. 203. There is in it no express repeal of that part of the Norwich charter covering its subject-matter. It must be conceded that the subject-matter of this statute covers the whole subject of condemnation for a water-supply of every city in the State, including Norwich. The later statute is thus exclusive, and its provisions are manifestly repugnant to those of the Norwich charter relating to the same subject-matter. "Wherever a later statute is repugnant in its provisions to those of a prior one, there is a repeal to the extent of the repugnancy; and wherever a later statute is exclusive, that is, when it covers the whole subject to which it relates, the former is repealed." *Fair Haven & W. R. Co.* v. *New Haven*, 75 Conn. 442, 446, 53 Atl. 960. The Act of 1895 altered, by necessary implication, the charter amendment of 1893, and made the power of the water commissioners to take depend upon the decision of the Superior Court as to its necessity. Public Acts of 1901, p. 1378, chapter 178, re-enacted § 2 of the Act of 1895, as part of a general Act concerning the purity of water for public and domestic use, and expressly provided, in § 9, that

"all acts and parts of acts inconsistent herewith are hereby repealed." Since these two Acts are clearly inconsistent, if it be true that the charter amendment of 1893 permits a taking without a judicial determination of the necessity, it must follow that if the charter were not by implication altered and amended by the Act of 1895, it was expressly altered and amended by the Act of 1901. If, contrary to the legislative declaration, the amendment of 1893 be held a special or local statute, the same result must be reached. They cover the same subject. While a repeal or amendment by implication of an earlier special statute by a general statute is not favored, it will result, to the extent of the repugnancy, by express reference or necessary implication, where the later statute covers the same subject. *Hartford* v. *Hartford Theological Seminary*, 66 Conn. 475, 485, 34 Atl. 483. In this case there is a necessary implication of such repeal of power to take.

It is highly desirable that the same right to take *in invitum* and the same procedure may prevail with all corporations having the power to supply our communities with water. Hence it is reasonable to infer that the legislature intended by the Act of 1895 to bring all such corporations within the established policy of the law, viz.: a uniform system of procedure for determining the issue of necessity involved in every condemnation to secure a water-supply. We have before had occasion to declare the provisions of a local charter repealed by implication by a general statute. We held a general statute relating to health repealed, by implication, the provisions of the New London charter covering the same subject-matter. *Braman* v. *New London*, 74 Conn. 695, 698, 51 Atl. 1028. And in *Southport* v. *Ogden*, 23 Conn. 128, we held a by-law of a borough, prohibiting the taking of oysters under a penalty, abrogated by a general law of the State, passed subsequent to the

granting of the charter, prohibiting the same thing. So that whether the Act of 1893 be regarded as a public or a private Act, the conclusion must result that it was amended and altered by the Act of 1895, as amended by that of 1901, now General Statutes, § 2600.

The suggestion of the opinion that this position is untenable by reason of General Statutes, § 4931, is, we think, without force. So much of this section as, in effect, recites that acts of incorporation are not repealed by the revision, was in the Revision of 1888, and in existence at the date of the passage of the Act of 1895, as well as that of 1901. The charter of Norwich stood as it had been amended by the Public Acts of 1895 and 1901, and General Statutes, § 4931, provides that the charter as amended up to that time is not affected by the Revision repealing all public acts except in certain specified cases. General Statutes, § 4931, protects the charter, in its condition after the amendments of 1895 and 1901, against a repeal by the Revision. The section relied on (§ 4931) has nothing to do with the question whether the Act of 1895, or that of 1901, in fact amended the charter.

The charter is as general and indefinite as to the time of the taking as it is as to the location of land and water rights to be taken. The board of water commissioners may renew this proceeding at any time and vote to take the pond of any manufacturing company whose industry may be the support of an entire community. And the burden of proving the unreasonableness of this action, the opinion of the court casts upon the owner whose property is to be taken. We think such a grant of power contrary to public policy, essentially unreasonable and unjust and subversive of fundamental principles, and that it ought not to be sustained because it is not due process of law.

Norwich can secure all the property and water rights

it requires by bringing its application, under General Statutes, § 2600, to the Superior Court, and that court will award it all such as may be proven necessary for such purposes; more than this it ought not to be permitted to condemn.

I think the motion to dismiss should have been granted, and the demurrer to the application sustained.

In this opinion RALPH WHEELER, J., concurred.